UNITED STATES, Appellee

v

THEODORE K. LORD, Private, U. S. Army, Appellant

13 USCMA 78, 32 CMR 78

No. 15,643

May 11, 1962

*First Lieutenant Robert L. Brosio* argued the cause for Appellant, Accused. With him on the brief were *Colonel W. H. Blackmarr, Lieutenant Colonel Ralph Herrod,* and *Captain Jerome D. Meeker.*

*Captain Alvin B. Fox* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy, Major Francis M. Cooper,* and *Captain William A. Zeigler.*

## Opinion of the Court

QUINN, Chief Judge:

The accused contends the charges against him were improperly withdrawn from one court-martial and referred to another for the purpose of having a more severe sentence imposed upon him in event of conviction.[1]

As a result of his conduct on the early morning hours of January 2, 1961, a number of charges were filed against the accused, including two specifications of extortion and two specifications of unlawfully confining Captain and Mrs. Christopher Kirk, in violation of Articles 97 and 127, respectively, Uniform Code of Military Justice, 10 USC §§ 897, 927. Pending disposition of the charges, the accused underwent psychiatric examination in an Army hospital for several weeks. Three of the doctors who examined him were of the opinion that while the accused could distinguish between right and wrong as to the offenses charged, he could not adhere to the right and was not capable of entertaining the intent required for some of the offenses. Other doctors were of the opinion the accused was able to adhere to the right and to form the requisite intent. Informed of the conflict in medical opinion,

---

[1] The accused was convicted by the second court-martial and sentenced to a dishonorable discharge, confinement at hard labor for eight years, the maximum period of confinement, and accessory penalties. On review, a board of review affirmed the findings of guilty but modified the sentence by reducing the confinement to two years.

the convening authority nonetheless referred the charges to trial on March 28, 1961, before a general court-martial constituted by Appointing Order No. 9. The reference was by appropriate endorsement on the charge sheet. The case, however, was not tried by this court. Instead, it came on before a court-martial appointed by Order No. 33, dated May 17, 1961.

On May 22, 1961, the court appointed by Order No. 33 convened to hear the charges. Defense counsel conducted a *voir dire* examination of the court members. He challenged no member for cause and excused one peremptorily. At the end of the *voir dire,* defense counsel asked for and was granted an out-of-court hearing. He moved to dismiss the charges "without prejudice to the Government," on the ground they had been improperly withdrawn from the court-martial appointed by Order No. 9. According to an offer of proof by defense counsel, the members of the court appointed by Order No. 9 were informed at an unspecified date that the accused's case would come before them for trial on May 22, 1961. Defense counsel was similarly advised. On May 17, that court convened to hear the case of Sergeant T. C. Templeton. Templeton was convicted, and the court imposed a sentence which did not include a punitive discharge or confinement. The offer of proof continues with a statement to the effect that "approximately one-half hour" after the Templeton case was concluded defense counsel was informed that a different court would hear this accused's case. That same day, court-martial Order No. 33 was promulgated. It appointed a court-martial having court members different from those in Order No. 9. However, the appointed trial and defense counsel were the same. The new order directed that all unarraigned cases in the hands of trial counsel appointed by Order No. 9 were to be brought to trial before the new court. One such unarraigned case was that of the accused.

Arguing the significance of the facts contained in the offer of proof, defense counsel maintained it was "obvious" the "sole reason" for the change

of court was "the Government's dissatisfaction with the sentence given by the Templeton court." He said that a change of court for that purpose was improper. Trial counsel acknowledged that he informed defense counsel of the change in court "perhaps an hour or two" after the Templeton case. However, he said he could "give no reasons for the referral" of the charges to the court appointed by Order No. 33, since the decision was made by the convening authority. He insisted that defense counsel's offer of proof showed nothing but mere "coincidence" between the action of the court in the Templeton case and reassignment of the accused's case to the new court-martial.

The law officer denied the defense motion to dismiss. In his ruling he pointed out there were many factors that could have led the convening authority to direct trial before the new court. He observed that the defense had not challenged for cause any member of the court, and in its offer of proof there was "no establishment of [an improper] motive" for reference of the charges to the court appointed by Order No. 33. He asked defense counsel if he had anything further to present on the matter. Counsel indicated he had nothing; he also indicated he believed it was not necessary to call the convening authority to testify on the motion to dismiss. The law officer denied the motion "at this time." The accused contends the ruling is erroneous as a matter of law.

United States v Williams, 11 USCMA 459, 29 CMR 275, provides an appropriate starting point for consideration of the law officer's ruling. In that case we noted that under the Manual for Courts-Martial, United States, 1951, charges cannot be withdrawn from one court and sent to another without "proper reason." See Manual, supra, paragraph 33*j*. We held that withdrawal of charges after the court is convened to try the case because the prosecution is afraid the court will impose a light sentence is not good cause. See Manual, supra, paragraph 56*b*. We ordered appropriate corrective action since the record of trial clearly showed the withdrawal of the charges was ac-

complished after the court-martial was convened to try the case only because the convening authority's legal staff thought the sentences imposed by the court-martial in the preceding cases were inadequate.

Aside from the fact that here the first court never convened for the trial of the charges against this accused, there are material differences between the facts in this case and those in *Williams*. In *Williams*, it was undisputed that trial counsel was dissatisfied with the sentences imposed by the first court in a number of cases tried immediately before the charges against the accused were to be heard. This dissatisfaction was communicated to the station legal officer and the convening authority who ordered the charges referred to another court. In this case, trial counsel said he could himself give no reason for the change. Additionally, the law officer specifically called defense counsel's attention to the fact that his offer of proof did not show trial counsel had apprised him of the reason for the change of court. Defense counsel's response was merely to acknowledge that trial counsel made "no statement . . . on that" and to rest on the offer of proof as made.

Paragraph 56*b* of the Manual provides that if charges are withdrawn after evidence is introduced, "the reasons therefor should be stated in the record of trial." No similar requirement is provided as to the withdrawal of charges and referral to another court *before* the first court is convened.[2] Consequently, if the court-martial has not convened, the failure to give reasons for the withdrawal of charges in the order of withdrawal is not evidence that there is in fact no good reason therefor. Cf. Article 29 (a), Uniform Code of Military Justice, 10 USC § 829; United States v Boysen, 11 USCMA 331, 29 CMR 147. Stated differently, since the reason for

withdrawal of charges from a court before the court is convened need not be set out in the record, it may be presumed, in accordance with the general presumption of regularity that attends official action, that there is a proper reason for the withdrawal. See United States v Greenwalt, 6 USCMA 569, 20 CMR 285; United States v Whitley, 5 USCMA 786, 19 CMR 82. On the facts presented, the law officer properly denied the motion to dismiss since there was not even a "recognizable indication" in the defense offer of proof that the trial schedule was changed for an improper purpose. United States v Allen, 5 USCMA 626, 18 CMR 250.

In a second assignment of error, the accused contends the law officer erred to his prejudice by refusing requested instructions regarding the two specifications of unlawful confinement with which he was charged. Briefly, the circumstances which led to the filing of these, and the other charges, are as follows: In the early morning of January 2, 1961, the accused appeared at the first-floor apartment of Captain Christopher J. Kirk. After effecting entry, the accused at knife point, demanded the Captain and Mrs. Kirk give him a car. Informed the Kirks had no car, he said they had "better hurry up" and get one or "somebody's going to die." Mrs. Kirk suggested she call a friend at a certain telephone number. The number was that of the local military police office. Mrs. Kirk telephoned and managed to convey to the answering MP the information that the accused was in the apartment. A police patrol was dispatched. It arrived at the area within two minutes. However, the accused observed the flashing light on the police jeep. He said to the Kirks, "Somebody's tricked me; now you're going to die." Captain Kirk struggled with the accused. During the struggle, he called his wife to jump out the window to the ground. Mrs. Kirk got

<hr>

[2] A new endorsement of reference is "customarily . . . affixed to the charge sheet." Manual for Courts-Martial, United States, 1951, paragraph 33*j*. The procedure was not followed here. However, the second ap-

pointing order contained, as noted in the text, the direction to refer all unarraigned cases to the new court-martial. See also United States v Emerson, 1 USCMA 43, 1 CMR 43.

to the window ledge but did not jump. However, since he expected her to jump, the captain broke away from the accused and leaped from the window to the ground. The accused succeeded in forcing Mrs. Kirk back from the window ledge into the apartment. He then called to Captain Kirk and told him to return or he would kill Mrs. Kirk. For a time, using a large carving knife, the accused held the Kirks prisoners in the apartment. During this period he resisted the efforts of a Chaplain and the Chief of the Department of Neuropsychiatry of the Army Hospital, who were called to the scene, to induce him to surrender. He then decided to leave the apartment. With the point of the knife held against Mrs. Kirk's neck, the accused and the Kirks proceeded out of the building. In the street, the accused ordered everyone away from a car he had demanded for his escape. The first sergeant of the accused's company and Military Police Master Sergeant Brown approached. As Sergeant Brown came abreast of the group he jumped upon the accused. Joined by several others, Brown overpowered the accused.

In an out-of-court hearing the law officer said that as to the offense of unlawful confinement he proposed to instruct the court-martial it could convict the accused only if it found beyond a reasonable doubt that the accused "confined" the captain and Mrs. Kirk in their apartment and that he was "not authorized by law to confine" them. Defense counsel requested a change in the proposed instruction. He contended the offense required a "specific intent"; therefore, he asked that the court be instructed it must find that the confinement was "intentional." Part of his argument is as follows:

"DC: I say that the Government's position that any act that results in confinement is sufficient would make a man guilty. If, while we are working here tonight, unintentionally, or if we are accidentally locked in, then you are confined and somebody has committed a criminal offense. I don't believe that to be the law.

"TC: If the Government may

just comment on that particular point, as to any act. The Government thought it was apparent that it would make it an unlawful act and it's obvious that an act, accidentally locking the doors which the defense counsel has used as an example would not be such an unlawful act.

"DC: The point is that it takes an intentional act.

"LO: I think I understand the contention that the defense counsel has."

Defense counsel also asked the law officer to add to the instruction a definition of "confinement" as follows: "Confinement is the intentional exercise of force, or threat of force, by which one is deprived of his liberty, or compelled to remain where he does not wish to remain." The law officer denied both requests, with the observation that intent was not a "third essential element" of the offense, the word "confinement" was not a "word of art," and was "well enough known" to need no further definition. At the appropriate time the law officer instructed along the lines indicated in the out-of-court hearing. He further advised the court-martial that the offense of unlawful confinement did not require a specific intent, and consequently mental impairment not amounting to legal insanity did not absolve the accused from criminal responsibility.

Article 97 defines the offense as follows:

"Any person subject to this chapter who, except as provided by law, apprehends, arrests, or confines any person shall be punished as a court-martial may direct."

The language of the statute does not refer to any specific state of mind on the part of the person accomplishing the confinement. Specific intent, in the strict sense therefore, is not an essential element of the offense; and the mere conscious or intentional performance of the proscribed act is a violation of the Article. See United States v Morgan, 8 USCMA

341, 24 CMR 151. Article 97 does not require a particular state of mind as a condition for conviction; it is sufficient if the prohibited act is knowingly and deliberately performed. The word "confine" itself imports intentional conduct. In United States v Picotte, 12 USCMA 196, 30 CMR 196, we said it is "well understood." As a transitive verb, it implies a conscious awareness by the person performing the act that the one who is being "confined" is deprived of his freedom of movement. Perhaps in some situations a fuller instruction may be required on the effect of evidence tending to show the absence of an awareness on the part of the accused that his act forcibly restrains the freedom of movement of another, as in the case of locking a person in a room believed to be vacant, which was cited by defense counsel to illustrate the appropriateness of the requested instructions. See United States v Acfalle, 12 USCMA 465, 31 CMR 51. This case, however, does not present such a situation. The evidence shows the accused and his victims were face to face at all times; there is nothing to show even the possibility that confinement of the Kirks resulted from accused's mistaken belief or negligence. Consequently, there was no need to instruct on the effect of these circumstances. Cf. United States v Eagleson, 3 USCMA 685, 14 CMR 103. We conclude the law officer did not err in denying either of the requested instructions.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree with my brothers that there is no evidence in this record which demonstrates that the withdrawal of the charges from the original court-martial and their reference to a new panel for trial was not for good cause.

For the reasons set forth in my separate opinions in United States v Hardy, 11 USCMA 487, 29 CMR 303, and United States v Picotte, 12 USCMA 196, 30 CMR 196, I am unable to agree that this accused committed the offense of unlawful confinement, in violation of Uniform Code of Military Justice, Article 97, 10 USC § 897. Accordingly, I would set aside the findings of guilty with respect to these specifications and return the record to the board of review for reassessment of the sentence.