STANLEY A. PETTY, Lance Corporal,
U. S. Marine Corps, Petitioner

v

CONVENING AUTHORITY, Colonel P. M. Moriarty,
U. S. Marine Corps, Commanding Security
Battalion, Marine Corps Base, Camp
Pendleton, California, Respondent

20 USCMA 438, 43 CMR 278

Miscellaneous Docket

No. 71–3

April 2, 1971

*Commander Maitland G. Freed*, JAGC, USN, argued the cause for Petitioner. With him on the brief was *Captain Raymond T. Bonner*, USMCR.

*Lieutenant Colonel Charles J. Keever*, USMC, argued the cause for Respondent. With him on the brief was *Lieutenant James E. Akers*, JAGC, USNR.

## Opinion of the Court

FERGUSON, Judge:

By this Petition for Extraordinary Relief, petitioner asks, *inter alia*, that the Court enjoin the respondent from proceeding with the Article 32 investigation which he ordered in connection with charges lodged against the petitioner. The petition avers:

On December 30, 1970, charges were preferred against the petitioner alleging willful disobedience of a lawful order of a superior noncommissioned officer and assault upon the same noncommissioned officer (Charge I, specifications 1 and 2), and communicating a threat to kill two noncommissioned officers (Charge II), in violation of Articles 91 and 134, Uniform Code of Military Justice, 10 USC §§ 891 and 934, respectively. On January 4, 1971, these charges were referred by the respondent to trial before a special court-martial appointed by his convening order Serial 102–70, dated October 15, 1970. Trial was scheduled for January 8th but at the request of defense counsel, concurred in by Government counsel, the military judge, assigned to the special court, granted a continuance. On January 14th, defense counsel submitted a request for four named witnesses, none of whom were then at Camp Pendleton. On the following day, the respondent withdrew the case from the special court-martial and ordered an investigation pursuant to Article 32, Code, supra, 10 USC § 832.

Petitioner contends that no new matters regarding the seriousness of the offenses were brought to the attention of the respondent between January 4th and 15th. Allegedly, the respondent advised defense counsel that the "'expense, time, and trouble'" of providing the requested witnesses warrant elevating the case from a special to a general court-martial.

Petitioner declares that if the charges are referred to a general court-martial, a substantially greater sentence could be imposed; since trial by general court-martial could result, not from the seriousness of the offenses but solely by reason of his request for witnesses, this Court should enjoin further proceedings under Article 32.

In response, the Government submitted affidavits from the respondent, Colonel Moriarty, his legal adviser, Chief Warrant Officer Baird, and trial counsel, Captain Parish.

Colonel Moriarty advised that he had conducted office hours in relation to the event which resulted in the charges against the petitioner. After hearing the complaining witnesses relate their observations of what had occurred, and receiving a denial of the allegations from Petty, who declared he had a witness, Colonel Moriarty believed he had received sufficient information to refer the charges to judicial proceedings. Since Petty, who was then confined in the Base Correctional Facility following conviction for manslaughter in Vietnam,[1] was tentatively scheduled to be transferred to Portsmouth on the next prisoner draft, January 12, 1971, Colonel Moriarty decided to send the charges to a special court-martial, despite the allegations of extremely serious offenses against him. He hoped to have the matter settled judicially before that date. Not until the request for witnesses on January 14th did Colonel Moriarty become aware of the allegations of malfeasance or malperformance of duty against the guard force, which was contained in the summary of expected testimony. After additional independent inquiry at the Correctional Facility and consultation with his legal adviser, he "withdrew the special court-martial that had been awarded to PETTY and ordered an Article 32 investigation to look into the

---

[1] Petty's original sentence to two years confinement at hard labor had been reduced to ten months.

entire course of events that had transpired." He acknowledged that while the words " 'expense, time, and trouble' " possibly were used by him in a subsequent discussion with defense counsel, "at no time were these cited as the reasons for ordering the Article 32 investigation." Colonel Moriarty ordered the Article 32 investigation "rather than a JAG type investigation" because he believed that the allegations of assault made against custodial personnel "were not well-founded."

In his affidavit, trial counsel related that upon receipt of the request for the witnesses on the 14th, he directed the legal officer to inform the convening authority of the request and the fact that he (trial counsel) believed the witnesses to be material to the defense case. Trial counsel recommended that the convening authority withdraw the case from the special court-martial and order an Article 32 investigation. He denied having "told the Defense Counsel that if he would withdraw his request for witnesses, the case would be re-referred to a Special Court-Martial." Trial counsel also asserted that at the time the continuance was obtained he had requested defense counsel provide him with a list of witnesses. According to the affidavit, defense counsel declined, at that time, to do so.

The legal officer's affidavit detailed his activities with regard to the original institution of charges and referral to the special court-martial. He agreed with trial counsel's recommendation to withdraw the case and order the Article 32 investigation and so informed the respondent. He "considered such a course of action was in the best interest of the accused, PETTY, in view of his doubtful credibility as a witness in his own behalf at a Special [?] Court-Martial in the Republic of Vietnam for violation of Articles 119 and 121 UCMJ, as well as the questionable credibility of the four witnesses requested by the defense in view of the nature of the

offenses for which they were convicted."[2] Allegations by the petitioner that he had been mistreated by a guard and the apparent conflicting statements of one of the requested witnesses also played a part in the legal officer's recommendation to the respondent. He denied having informed defense counsel that "if the request were withdrawn that the case would remain at the Special Court-Martial level as I am fully aware that such a decision can only be made by a Convening Authority."

Stripped to the essentials, the petitioner avers that the charges, which had been originally referred to a special court-martial, were withdrawn as a preliminary to subsequent referral to a general court-martial, solely because defense counsel requested the presence of witnesses whose expected testimony was shown to be material, relevant, and necessary. The respondent denies this allegation and asserts that the case was withdrawn and an Article 32 investigation ordered for the purpose of looking into the entire course of events that had transpired, in light of the petitioner's disclosure that he had been mistreated by custodial personnel and was acting in self-defense.

When charges have been referred to one court-martial they may not be withdrawn and sent to another without a "proper reason." Paragraph 33$j$, Manual for Courts-Martial, United States, 1969 (Revised edition); United States v Williams, 11 USCMA 459, 29 CMR 275 (1960); United States v Lord, 13 USCMA 78, 32 CMR 78 (1962). It is uncontroverted that the charges in this case were sent to a particular court-martial[3] and in fact the military judge assigned thereto, Colonel Oliver, acted in that capacity, with reference to the case, by granting the requested continuance. Article 40, Code, supra, 10 USC § 840; paragraph 58, Manual, supra. Since the military judge granted a continuance until January 15th, it is at once apparent that Colonel Moriarty, as commander of the Correctional Fa-

---

[2] The witnesses, all former prisoners in the Base Correctional Facility, having been convicted of sodomy and conspiracy to commit sodomy, were among those prisoners transferred to Portsmouth on January 12, 1971.

[3] See Appendix.

440

cility, was aware, as early as the 8th of January, that the petitioner would not be among the prisoners transferred to Portsmouth on the 12th. His desire to conclude the matter expeditiously was thus circumscribed and he had already learned at office hours, on December 24th, that Petty "had a witness." At that time, trial counsel too learned that the accused intended to plead not guilty and would require witnesses in his behalf, as evidenced by trial counsel's request to be advised of their identity.

Not until the *identity of the witnesses,* as prisoners who were among those transferred to Portsmouth on the 12th, was disclosed on January 14th did anyone appear to believe it necessary to have the charges investigated under Article 32 of the Code, a necessary concomitant to the later referral of charges to a general court-martial. The legal adviser to Colonel Moriarty, who recommended that he take such action, disclosed in his affidavit that he based his recommendation on the allegations of maltreatment of Petty, the apparent conflicting statements of at least one of the witnesses, the "questionable credibility of the four witnesses requested by the defense," and the "doubtful credibility" of the petitioner, Petty. Trial counsel gave no particular reason for his recommendation that an Article 32 investigation be conducted. He simply stated that he agreed with the legal adviser and he considered the witnesses material to the defense case. Colonel Moriarty, after learning of the request for the witnesses and their identity, and personally inspecting the area of the Correctional Facility where the offenses allegedly occurred, believed that the allegations of Petty that he had been assaulted "were not well-founded." In his opinion, an Article 32 investigation was the appropriate vehicle to uncover the truth of the matter.

The appropriate basis for directing an investigation under Article 32 is the seriousness of the offenses. Paragraph 33*e,* Manual, supra. No new information regarding the seriousness of the charges *against the petitioner* was brought to the attention of Colonel Moriarty between January 4th, the date of referral to the special court-martial, and January 15th, the date when the charges were withdrawn. The possible complicity of confinement personnel, as reflected by allegations contending misconduct on their part, detracted from rather than enhanced the magnitude of the charges insofar as the petitioner was concerned. It was to be his defense. If true, these allegations suggested the potential for criminal charges against the confinement personnel rather than the petitioner. A *forum for determining the petitioner's* responsibility had already been selected.

We have not been informed of the type of proceeding conducted before the military judge on January 8th at which the continuance was granted until January 15th. If, in fact, he acted during an Article 39(a) ▮▮▮▮ session, and a *formal* continuance was granted (paragraph 58*e,* Manual, supra), the action of the respondent in removing the case from the consideration of the military judge constituted an illegal interference with the exercise of his judicial function.[4] Article 40, Code, supra; paragraph 67*f,* Manual, supra; United States v Knudson, 4 USCMA 587, 16 CMR 161 (1954); United States v Sears, 20 USCMA 380, 43 CMR 220 (1971). Cf. United States v Boehm, 17 USCMA 530, 38 CMR 328 (1968). ▮▮▮▮ Concededly, paragraph 58, Manual, supra, makes a distinction between a postponement, which may be granted by either the convening authority or by the military judge, and a continuance. A postponement is a request for delay made before trial. In this case, however, the parties speak only of a continuance and this determination is for the military judge alone independent of the preference of the convening au-

---

[4] We are not here concerned with the question of jeopardy as the case had not yet reached that point. United States v Wells, 9 USCMA 509, 26 CMR 289 (1958).

thority. Paragraph 58e, Manual, supra; United States v Knudson, supra.

Assuming, without deciding, that the continuance was granted *informally* and was in the nature of a postponement,[5] other matters require our consideration. A request for witnesses is properly addressed to trial ■■■■ ■ counsel, whose responsibility it is to secure witnesses necessary to the prosecution and the defense case. Paragraph 115a, Manual, supra. When trial counsel disagrees as to the necessity for particular defense witnesses, the request is referred to the convening authority for resolution, or to the military judge, according to whether the question arises before or after the trial begins. If the convening authority determines that the witnesses will not be required to attend the trial, the request may be renewed at trial for determination by the military judge, as if the question has arisen for the first time during trial. This provision of the Manual has the force of law. United States v Smith, 13 USCMA 105, 32 CMR 105 (1962). In this case trial counsel agreed that the named witnesses were necessary to the defense case. The legal adviser to the respondent informed the latter that "if he de-

nied the request and the case went to trial as scheduled, the Military Judge would most likely approve such a request under the circumstances." The proper procedure, at that ■■■■ ■ point, would have been to have made the necessary arrangements for their appearance or to deny the request. The respondent's answer to the request for the witnesses, however, was to withdraw the case from the consideration of the military judge scheduled to hear it and to refer it to an Article 32 investigation because the respondent believed that the allegations of assault made against custodial personnel, to which the witnesses reportedly would testify, "were not well-founded." This is hardly the action contemplated in the rules of procedure established by paragraph 115a, Manual, supra.

In our opinion, the respondent has not shown good cause why the relief sought should not be granted. Fleiner v Koch, 19 USCMA 630. Accordingly, the request for a Writ of Prohibition, enjoining the respondent from proceeding with the Article 32 investigation which he ordered in connection with charges lodged against the petitioner, is hereby granted.

---

[5] Cf. McClaughry v Deming, 186 US 49, 46 L Ed 1049, 22 S Ct 786 (1902); Runkle v United States, 122 US 543, 30 L Ed 1167, 7 S Ct 1141 (1887); United States v Robinson, 13 USCMA 674, 33 CMR 206 (1963).

APPENDIX

"Name, Grade, and Organization of Accuser Signature
 O. D. Easterly, HqCo, H & SBn,
 SSGT USMC MCB CamPen, Calif. /s/ O. D. Easterly
 Affidavit

Before me, the undersigned, authorized by lay [sic] to administer oaths in cases of this character, personally appeared the above-named accuser this *30th* day of *December,* 1970, and signed the foregoing charges and specifications under oath that he is a person subject to the Uniform Code of Military Justice, and that he either has personal knowledge of or has investigated the matters set forth therein, and that the same are true in fact, to the best of his knowledge and belief.

CWO 4, USMC, HqCo, H & SBn,
MCB, CamPen, Calif.
 Grade and Organization of Officer /s/ M. K. Baird, Jr.
 Signature

Legal Officer
Official character, as adjutant, summary M. K. Baird, Jr.
court, etc. Typed name
 (MCM, 29*e*, and Article 30*a* and 136)

Officer administering oath must be a commissioned officer.
 31 Dec 70

I have this date informed the accused of the charges against him (MCM, 32*f*(1)).

J. H. COLE, JR., WO, USMC, Adj, SotyBn
MCB, Camp Pendleton, Calif. By direction /s/ J. H. Cole, Jr.
Name, grade, and organization of immediate Signature
 commander
Security Battalion, Marine Corps Base, Camp Pendleton, California 31 Dec 70
Designation of Command of Officer Place Date
Exercising Summary Court-Martial
Jurisdiction

The sworn charges above were received at *1000* hours, this date (MCM, 33*b*).
 ~~for the~~[1] ————————————

J. H. COLE, JR., WO, USMC, Adj, SotyBn
 signing
MCB, Camp Pendleton, Calif. By direction /s/ J. H. Cole, Jr.
Name, grade, and official capacity of officer Signature
 signing 1st endorsement
Security Battalion, Marine Corps Base, Camp Pendleton, California 4 Jan 71
Designation of Command of Convening Place Date
Authority

Referred for trial to the *special* court-martial appointed by *my convening order*
Serial: 102–70
dated: 15 October 1970 19—, subject to the following instructions:[2]

COL V. L. OLIVER, U. S. MARINE CORPS
IS DETAILED AS THE MILITARY JUDGE

 ~~By~~ ———— ~~of~~ ————
 ~~Command or order~~

P. M. MORIARTY, Col, USMC, Commanding
Name, grade, and official capacity of officer /s/ P. M. Moriarty
 signing Signature

I have served a copy hereof on each of the above-named accused, this ————
day of ————————, 19—.

Name, grade, and organization of trial counsel Signature

————————————————————————————————————

[1] When an appropriate commander signs personally, inapplicable words are stricken out. [2] Relative to proper instructions which may be included in the indorsement of reference for trial, see MCM, 33*j*(1). If none, so state.
 Certified a true copy
 /s/ [Illegible signature] USMCR Exhibit 'A.' "

 Chief Judge QUINN concurs. States, 19 USCMA 511, 42 CMR 113
 (1970), dissenting opinion. The para-
DARDEN, Judge (dissenting): doxical result here is that in attempting
 to aid its jurisdiction, the Court stops
In my opinion the Court's action can- proceedings that could lead to a gen-
not accurately be described as being in eral court-martial, the sentence limits
aid of this Court's jurisdiction or poten- of which are more likely to result in a
tial jurisdiction. See Collier v United

**443**

case of which this Court would ultimately have jurisdiction, and permits proceedings by a special court-martial, the sentence limits of which are less likely to produce a case to which this Court's jurisdiction would attach. Without any action by this Court, the charges against the petitioner may be abandoned after the Article 32 investigation.

Congress simply has not empowered this Court to vindicate all constitutional or statutory rights of a member of the armed forces at all places and in all circumstances. Just as Congress has not conferred on Article III courts all the jurisdiction that the Constitution permits, Congress has not conferred on this Court all the power that might be given us. Since an important part of our function is to assure that officials administering military justice act within the limits of their authority, we ought to be certain that our actions are within the limits of our own charter.

Beyond the issue of jurisdiction, it seems to me that the principal opinion goes beyond existing law. After a court is convened, the withdrawal of charges from one court and referral of them to another requires good cause. United States v Williams, 11 USCMA 459, 29 CMR 275 (1960); paragraph 56, Manual for Courts-Martial, United States, 1969 (Revised edition). But in this case the court has not been convened and thus the convening authority presumably was acting within his power. Cf. United States v Lord, 13 USCMA 78, 32 CMR 78 (1962).

If the accused is being subjected to procedures looking toward a general court-martial only because he desired special court-martial witnesses who had already been transferred, any such action is reprehensible. In this connection, the attempted explanation about why the allegations of complicity by the guards should be pursued in an Article 32 investigation of the accused's offense may be less than overpowering in its persuasiveness. But this issue can be developed by the defense at the Article 32 investigation or at the general court-martial, if one results. After this Court's emphasis on the importance of confronting witnesses in evaluating their credibility, I am surprised by the willingness to resolve a factual issue on nothing more than a petition and the Government's response to the Court's show cause order. This is another illustration of the normal impracticality of initiating action on extraordinary writs in the highest court within a system. When Congress intends for extraordinary relief to be granted in cases of this type, I believe it will legislate a system under which hearings can be conducted and witnesses produced for a factual determination that would be reviewable by the Courts of Military Review or this Court, or both.

I believe the Court's action in ordering the Government to show cause was improvident and that any harm the accused suffered should be reviewed in the normal course of the appellate process.