UNITED STATES

v.

**Senior Airman Paul J. UNDERWOOD
III, FR162–68–6473, United States
Air Force.**

**ACM 32633.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 11 Oct. 1996.

Decided 22 Oct. 1997.

Appellate Counsel for Appellant: Lieutenant Colonel Kim L. Sheffield, Major Carol L. Hubbard, and Captain Marge A. Overly.

Appellate Counsel for the United States: Lieutenant Colonel Michael J. Breslin, Captain Steven D. Dubriske, and Captain Mitchel Neurock.

Before SNYDER, GAMBOA, and SENANDER, Appellate Military Judges.

## OPINION OF THE COURT

SNYDER, Senior Judge:

Contrary to his pleas, a general court-martial comprised of officer and enlisted members convicted appellant of rape, forcible anal sodomy, indecent assault, and contributing to the delinquency of a minor by providing alcoholic beverages to a person less than 21 years of age, violations of Articles 120, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 925, and 934 (1994). He was sentenced to a dishonorable discharge, confinement for 3 years, forfeiture of all pay and allowances, and reduction to E–1. The convening authority approved the findings and sentence with the exception of the forfeitures, which were waived for a period of 6 months for support of appellant's wife. *See* Article 58b, UCMJ, 10 U.S.C. § 858b (1996).

Appellant submits three assignments of error, none of which we find persuasive, and only one of which merits extensive discussion. The first assignment of error is as follows:

> WHETHER THE MILITARY JUDGE ERRED BY FAILING TO DISMISS THE CHARGES AS IMPROPERLY REFERRED TO THE COURT–MARTIAL, WHERE THE CHARGES HAD BEEN WITHDRAWN FOR IMPROPER REASONS.

### I. *WAIVER*

Trial defense counsel erroneously styled the issue below as a Motion To Dismiss for lack of jurisdiction because of an improper withdrawal and referral. As a result, appellate government counsel assert appellant has waived this issue for appellate review because trial defense counsel did not state his motion with particularity. Specifically, the motion should have been for appropriate relief under Rule for Courts–Martial (R.C.M.) 905(b)(1) rather than under R.C.M. 907(b)(1)(A) as a Motion To Dismiss. Appellate government counsel argue that, because issues involving referral of charges for trial

are not jurisdictional in nature, trial defense counsel's styling of the motion as one averring a lack of jurisdiction is fatal to their effort to present it to this Court for review. However, appellate government counsel do not invite our attention to any authority for this assertion of waiver, other than a reference to the requirement of R.C.M. 905(a) that motions apply for particular relief.

We reject the government's assertion of waiver. First, R.C.M. 905(a), by its plain language, requires that a motion be for particular relief, not that it be stated with particularity: "The substance of a motion, *not its form or designation*, shall control." R.C.M. 905(a) (emphasis added). It also requires that a motion state the ground on which it is based and the relief sought. Trial defense counsel's Motion To Dismiss clearly meets this requirement. All the parties at trial were aware that the issue was whether the convening authority had withdrawn the charges from a properly convened court-martial and referred them to another court-martial for an improper reason. Trial defense counsel's incantation may have been incorrect, but his substance was very clear. *United States v. Fontenot*, 29 M.J. 244, 246 (C.M.A.1989); *cf. United States v. Stringer*, 37 M.J. 120, 125 (C.M.A.1993); *Stringer*, 37 M.J. at 130 (Gierke, J., concurring); *Stringer*, 37 M.J. at 130, 132 (Wiss, J., concurring in result) (defense counsel's unfocused objection prevented issue from being litigated and may have precluded prosecution from submitting evidence which would have clarified matter).

█ Last but not least, this is one of the more sensitive areas of the military justice process. Consequently, although issues of an improper referral for trial are not jurisdictional in nature, *potential improper command involvement in the preferral or referral process is not subject to waiver or forfeiture.* *United States v. Hamilton*, 41 M.J. 32 (C.M.A.1994); *United States v. Walsh*, 47 C.M.R. 926, 930, 1973 WL 14869 (1973); *see United States v. Blaylock*, 15 M.J. 190 (C.M.A.1983). Therefore, we will address the issue on the merits under the requisite standard of review.

## II. FACTS

There is no factual dispute, as all parties at trial below stipulated to the salient facts surrounding this motion. We will set forth only those germane to our disposition of this assignment of error. The offenses for which appellant was convicted occurred in Anchorage, Alaska. On or about 4 July 1995, AG, who then was 20 years old, reported to local police authorities that appellant raped her on or about 2 July 1995. In early August 1995, Alaska state prosecutors determined not to pursue action against appellant, and the Anchorage Police Department report was referred to the Air Force Office of Special Investigation (AFOSI) detachment at Elmendorf Air Force Base (AFB), Alaska. After receipt of the AFOSI report in December 1995, appellant's commander, on 2 February 1996, preferred charges of rape, forcible sodomy, indecent assault, and providing alcohol to a minor. An additional charge of rape of LM was preferred against appellant on 9 February 1996.

These charges were referred for trial on 1 April 1996. The original trial date was 3 June 1996, but an unopposed defense request for delay until 10 June 1996 was granted by the military judge. On 3 June 1996, the government requested a delay until 28 June 1996. The reason provided by the government for the delay was witness availability problems. Specifically, one of the putative victims, AG, had received an opportunity for long awaited employment with Alaska Airlines, and the job required training in Seattle, Washington, for the remainder of June. Further, AG did not want her prospective employer to know anything about the trial, and she asked the government to seek a delay. Faced with these circumstances, the government opted not to subpoena AG but seek the delay. In an R.C.M. 802 session, the military judge denied the delay. On 5 June 1996 at another R.C.M. 802 session, the government formally requested the military judge to reconsider his decision denying the delay, but the military judge adhered to his initial decision and again denied the request for delay. After consulting with both putative victims, and receiving advice from the staff judge advocate, on 7 June 1996, the

convening authority withdrew all charges and, *de facto,* dismissed them, as appellant's commander again preferred the charges (the convening authority's letter reflects only that the charges were withdrawn; no disposition was mentioned; *see United States v. Britton,* 26 M.J. 24 (C.M.A.1988); *United States v. Gray,* 26 M.J. 16, 21 (C.M.A.1988) (Everett, C.J., concurring in result); *United States v. Weatherspoon,* 39 M.J. 762, 766 (A.C.M.R. 1994)).

The charges were again investigated, Article 32, UCMJ, 10 U.S.C. § 832, on 23 July 1996, and were referred for trial on 16 August 1996 (the second referral failed to instruct that the rape charges were referred as non-capital, but all parties at the trial agreed that it was an oversight and tried the case as a non-capital case). By the time all the parties' schedules and the circuit's docket were reconciled, the Chief Circuit Military Judge set 7 October 1996 as the trial date, on which date proceedings commenced.

The record and allied papers also reflect another salient event to which the military judge alludes but without elaboration: on 22 May 1996, a second additional charge (initially, the charge involving LM was Additional Charge I) was preferred against appellant for divers rapes of his former wife, RL, while they were married. On 30 May 1996, the Investigating Officer recommended the charge and specification not be referred for trial due to insufficient evidence of force. On 12 June 1996, the convening authority accepted this recommendation and directed "withdrawal" of the charge and specification and returned it to appellant's commander for disposition pursuant to R.C.M. 404(b). We infer it eventually was dismissed.

After hearing arguments, the military judge found the withdrawal and referral of the charges to another court-martial were not for an improper reason and denied the motion. His findings on the issue are as follows:

Lieutenant Colonel Hasskamp was originally detailed as is mentioned in the stipulated facts. He granted a delay and the triggering event for that delay was adding another additional charge and the case became mine because he had a conflict on the agreed upon date and I emphasize 'agreed upon date.' At that point in time, the government agreed to try this case on whatever it was, 10 June, and I would have assumed that they would have coordinated with their witnesses and that all the things necessary to be prepared to try the charges that were known to them at that point in time and so that was a factor in my decision *to be somewhat hard-nosed* with the government about going to trial especially when the triggering event did not come to pass and I wasn't privy to what was going on, but the triggering event was the additional charge and the additional charge, at that time, had not been referred. I was not aware that it was not going to be referred.

So, the reason for the delay wasn't happening and then the agreed upon date was now no longer a good date and it was *somewhat irritating.* So, therefore, part of my process of holding the government's feet to the fire was they had done kind of a sloppy job of managing this case and when I gave them the choice of what to do in the sense of if you're going to go on the date scheduled, you'll have some choices to make. One of the choices I anticipated they might do is withdraw these charges, but if they did that they'd have to go back to the convening authority and explain why we're doing this and *I thought that might be a good management lesson for the prosecution of this case,* so that was not shocking to me that they would withdraw the charges. Nor was it a shock to me that they referred the charges.

\*      \*      \*      \*      \*      \*

Had [the government] been able to go on 28 June, then they would have thwarted my ruling, but they couldn't do that, so my ruling which denied a continuance as far as based on the facts and the law was not thwarted. The government did not get to do what they wanted to do which was go to trial with all these charges on the 28th of June 1996. Their choice, if they chose to go forward, was to do it at some date down the road. Before doing that, they would have to re-prefer, have another investigation providing the accused addition-

al benefits, additional inquiries, additional opportunity for an investigating officer to recommend it not go to trial, additional opportunity for the convening authority to decide not to take these charges to this forum or to a different forum and that's what did transpire in this case.

I see no interference at all with this court in any manner. The convening authority exercised prosecutorial discretion as to what he and his lawyers chose to do after this case ended the first time.

I will take judicial notice ... that the government does [have] a duty, under a statute and implementing regulations for coordinating with victims, and judges, I think, do less of that than the prosecution. So, the fact that they must look at the needs of—and I use the term alleged victim, not victims because they're not victims until someone decides they're victims. At least in this particular set of circumstances. So, I will take judicial notice that the government has some duties under these statutes in implementing regulations to inquire and to consult with alleged victims. My understanding is that they do not have the final say so, obviously, but this consulting process, and the fact that the government did not want to subpoena an alleged victim [to] force that person to be here. It's not an unreasonable exercise of that balancing. *I would not say the fact that I, based on the set of facts before me, was willing to force the government to do that* is a different matter because I'm the judge and I'm looking at things from a different perspective.

[T]he bottom line is I see even no appearance of interference with the judge's ruling. A judge's ruling is—if you're going to go to trial on June 10th with all these charges or you're not going to go to trial and that's what happened. They didn't go to trial and that's fine. There's a long and involved process which got us here today which is in the discretion of the convening authority. We're not going to a different forum. Charges haven't been drastically altered. I have no evidence of an improper motive before me. So, other than balance what the convening authority assumes his various interests are and get us

to trial at a later date with all the charges before the court today.

In some ways, what I did was I forced a dismissal without prejudice. I mean, they withdrew the charges. It's almost analogous to a [R.C.M.] 707 violation to note no prejudice. What happens is you start all over again and the opposite of that is I was intending the case to go sooner than later.

(Emphasis added)

■ Our standard of review for determining whether the withdrawal of charges and re-referral to another court-martial was for a proper reason is *de novo*. *United States v. Koke*, 34 M.J. 313 (C.M.A.1992). To dispose of this assignment of error, we must consider Article 40, UCMJ, 10 U.S.C. § 840 (1994), and R.C.M. 604, 707, and 906.

### III. WITHDRAWAL OF CHARGES AND RE-REFERRAL

■ R.C.M. 604(a) authorizes a convening authority, for any (or no) reason, to cause any or all charges or specifications to be withdrawn from a court-martial at any time before findings are announced. Further, R.C.M. 604(b) allows withdrawn charges to be referred to another court-martial *if* the withdrawal is for a proper reason. The requirement of a proper reason before withdrawn charges may be referred to another court-martial applies regardless of from which stage of the proceedings the charges are withdrawn. *Walsh*, 47 C.M.R. at 928. R.C.M. 604(b) mandates a very strict standard of proof when charges are withdrawn after introduction of some evidence on the general issue of guilt. That scenario, however, is not before us and we do not address it.

■ One proper reason for withdrawal of charges from one court-martial and referring them to a different one is when a superior authority deems referral to a higher level tribunal necessary to properly dispose of an offense. *Blaylock*, 15 M.J. at 193–94. The most common reason sanctioned as a proper one is the receipt of additional charges, which allows a convening authority to seek judicial economy via trying all known charges at a single trial, though this may entail an accused being tried by a different type court-

martial or being subjected to a higher maximum sentence. *Koke*, 34 M.J. at 315; *United States v. Jackson*, 1 M.J. 242 (C.M.A. 1976).

■ If there is a bright line rule in this area of military procedure, it is that a convening authority may not withdraw charges from one court-martial and refer them to another in a manner which is unfair or arbitrary to the accused. *Blaylock*. For example, a convening authority may not exercise this discretion to obtain court members who harbor a certain sentencing philosophy, be it towards severity or leniency. *Walsh*, 47 C.M.R. at 928; *United States v. Williams*, 29 C.M.R. 275, 1960 WL 4491 (C.M.A.1960). The most egregious form of unfairness is if charges are withdrawn in retaliation against an accused for demanding a right or privilege to which one is entitled. *Petty v. Moriarty*, 43 C.M.R. 278, 281, 1971 WL 12776 (C.M.A. 1971). Further, a withdrawal of charges and re-referral to another court-martial may not be used as a subterfuge to overturn a ruling of the military judge in favor of the accused. *Vanover v. Clark*, 27 M.J. 345 (C.M.A.1988). Further, if a withdrawal and re-referral is deemed an unfair or inappropriate avoidance of a procedural requirement, the convening authority's motive or good faith is not controlling. *See United States v. Fleming*, 40 C.M.R. 236, 1969 WL 6054 (C.M.A.1969) (convening authority advised accused would plead guilty and was unaware accused had been arraigned and guilty plea rejected by law officer when charges withdrawn and transferred to accused's original command for trial).

Trial defense counsel argued that the sole reason for the convening authority's action in the instant case was the military judge's denial of the government's request for "a continuance," which rendered his action improper *per se*, because it constituted an illegal interference with the military judge's exercise of his judicial authority. The specific prejudice which appellant supposedly suffered was denial of a speedy trial, and the government's avoidance of having to deal with an uncooperative victim. Further, trial defense counsel averred, appellant suffered "irreparable general prejudice." Notwithstanding this irreparable general prejudice, trial defense counsel argued that a severance of the charges would have been a satisfactory remedy.

Appellate defense counsel's brief echoes trial defense counsel. In addition to the specific prejudice of the approximately four month delay, however, appellate defense counsel asserts the destruction of AG's mental health records in the interim as a basis for finding specific prejudice. Both trial and appellate defense counsel assert that appellant can receive justice only by a rehearing without the burden of the charge involving LM, of which he was found not guilty. Appellate government counsel focus on the convening authority's reason for withdrawing the charges and essentially avers as coincidental, the fact the action avoided the military judge's ruling denying the delay.

## IV. CONTINUANCE OR DELAY

While not entirely dispositive of the improper withdrawal issue, we first address the parties' inaccurate use of the term of art "continuance" as synonymous with a "delay." It is germane because, if a convening authority runs afoul of a military judge's decision regarding a continuance, it is almost always deemed an illegal interference with the judicial functioning of the court-martial. *See Petty*, 43 C.M.R. at 282; *United States v. Knudson*, 16 C.M.R. 161, 165, 1954 WL 2439 (C.M.A.1954). Further, the military judge's ruling in the instant case addressed a request for a *delay*, not a continuance.

Continuances are authorized by Article 40, UCMJ, 10 U.S.C. § 840 (1994), which vests the discretion for granting or denying a continuance solely within the military judge or court-martial without a military judge, an extremely rare creature in this day and age. By Article 40's plain language, the convening authority is excluded from this part of the court-martial process. Neither Article 1, 10 U.S.C. § 801 (1994), nor Article 40 define or describe a continuance, but one may, from the fact that Article 40 does not include the terms "postponement" or "delay," draw a critical inference that a continuance addresses the temporary cessation of the proceedings rather than a delay of their inception.

The MANUAL FOR COURTS-MARTIAL, 1969 (REV.), UNITED STATES (MCM, 1969), and the precedents applying and construing it, clearly delineated the distinction between a continuance and a delay by the procedures for applying for one or the other. MCM, 1969 provided as follows:

> The necessity for a formal continuance may often be avoided by requesting the convening authority, the military judge, or the president of a special court-martial without a military judge, whoever is appropriate, to postpone the *initial session* of the trial or by requesting an adjournment or recess.

MCM, 1969, ¶ 58a (emphasis added).

This language clearly distinguished a continuance from a delay and identified a delay as a pretrial action, and the Courts applied it in that manner. "A postponement is a request for delay made before trial." *Petty,* 43 C.M.R. at 281. As implied in ¶ 58a, the proper forum for requesting a continuance was the formal convening of the initial Article 39(a), UCMJ, 10 U.S.C. § 839(a) (1994), session, or after arraignment. MCM, 1969, ¶ 58e.

R.C.M. 906(b)(1) provides no guidance or procedure for requesting a continuance, nor does it distinguish a continuance from a delay. The non-binding discussion of the rule provides only examples of proper grounds for a continuance. The Analysis, however, reflects that the Drafters retained the MCM, 1969, ¶ 58 roots for R.C.M. 906(b)(1), with one difference.

> Subsection 1 and the accompanying discussion are based on Article 40 and paragraphs 58b and c of MCM, 1969 (Rev.).... Paragraph 58a of MCM, 1969 (Rev.) which provided for "postponement" has been deleted. Reposing power to postpone proceedings in the convening authority is inconsistent with the authority of the military judge to schedule proceedings and control the docket.

MCM, Analysis, A21–52 (1995 ed.) (citation omitted).

This language appears to blur the MCM, 1969 distinction between a continuance and a postponement or delay, in view of the earlier version also excluding the convening authority after a court-martial formally convened. It does, however, reflect the President's acquiescence to our superior Court's historical disfavor towards the prior MCMs' provisions that impliedly granted the convening authority discretion equal to the law officer's or military judge's regarding the conduct of a court-martial after the initial session began. *See Petty,* 43 C.M.R. at 281; *Knudson,* 16 C.M.R. at 165. In any event, for our purposes, R.C.M. 906(b)(1) does not equate a delay with a continuance. This conclusion is buttressed by the fact that delays are addressed in R.C.M. 707.

As stated in Part II, *ante,* in the instant case the request for delay, the military judge's ruling, and the government's request for reconsideration, all occurred at a conference authorized by R.C.M. 802, prior to the initial Article 39(a) session. Accordingly, we are not dealing with a question of whether the military judge granted or denied a continuance and the tension which Article 40 unavoidably injects when a convening authority acts contrary thereto. Indeed, the protection of judicial discretion is the clearly articulated purpose of Article 40 and R.C.M. 906(b)(1). Although R.C.M. 707(c)(1) vests sole discretion in the military judge for granting or denying a delay after referral of charges, we believe the drafters did so to enhance speedy trial accountability rather than protect judicial discretion. *See* MCM, Analysis, A21–41 (1995 ed.).

■ For these reasons, we do not accept the defense's argument that the convening authority's withdrawal of the charges in the face of the military judge's refusal to grant a delay was, *per se,* an improper interference with the judicial authority of the military judge. We now apply these principles to the instant case.

## V. DISCUSSION

In his findings on this issue, the military judge took judicial notice of the government's duty to consult with "alleged victims." Although not specifically stated in his findings, the military judge was referring to AIR FORCE INSTRUCTION (AFI) 51–201, *Administration of Military Justice,* Chapter 7 (28

July 1994), which implements the Victim and Witness Protection Act of 1982, 42 U.S.C. §§ 10601–10605. Paragraph 7.10.10.7 requires the convening authority to obtain the victim's views regarding the scheduling of judicial proceedings.

■ After the military judge denied the delay, the convening authority was faced with the choice of either going to trial without the victim's testimony, which was really no choice at all, subpoena the victim and possibly deprive her of her new-found employment and potentially incur her hostility, or withdraw the charges with a view towards trial at a later date.

The convening authority selected a course of action which R.C.M. 707(b)(3)(A) allows. This option did not place him in defiance of the military judge because he was not attempting to circumvent an order of the court to do or not do a particular act. As the military judge observed, his ruling did no more than retain the existing trial date. Further, the convening authority did not merely withdraw the charges from the court-martial to which they were referred, he also dismissed them and travelled anew the entire procedural route to the court-martial which eventually convicted appellant. During this process, a second additional charge was dismissed as a result of the second Article 32 Investigation.

In the instant case, there is no evidence of any of the pernicious scenarios from which the judiciary must protect an accused. Appellant had not prevailed on an evidentiary motion or other substantive ruling when the charges were withdrawn, cf. Clark, 27 M.J. at 346; Petty, 43 C.M.R. at 280, and he faced the identical charges at trial that he faced at the time of the withdrawal.

Appellant has not demonstrated any specific prejudice whatsoever. Trial defense counsel averred appellant's trial was delayed to his prejudice, but he made no demand for a speedy trial during the interim. Further, at trial, he did not make a Motion To Dismiss for Denial of a Speedy Trial, either under Article 10, UCMJ, see United States v. Kossman, 38 M.J. 258 (C.M.A.1993); the 120-day standard of R.C.M. 707; or the Sixth Amendment. Therefore, appellant cannot now be

heard to complain about the delay caused by the convening authority's action. The destruction of AG's mental health records also falls short of specific prejudice for two reasons: 1) appellant's ability to receive and review those records is speculative because the military judge first would have had to conduct an in camera review and approve their release in part or in toto; and 2) there is no evidence that the destruction of the records was deliberately caused by the government. In the absence of bad faith, this does not constitute prejudice. See California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); United States v. Garries, 22 M.J. 288, 292 (C.M.A.), cert. denied, 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986).

■ As an alternative, trial defense and appellate defense argue for the relief they seek on the basis of general prejudice. General prejudice is invoked only in the absence of specific prejudice to an accused and when the egregiousness of the illegal act is so severe that it necessitates the invocation of the Court's supervisory authority to protect the integrity of the military justice process. Clark, 27 M.J. at 346; Walsh, 47 C.M.R. at 929. Finding no illegality or impropriety in the convening authority's action, there is no basis for exercising our supervisory authority in this case. We find the withdrawal of the charges and their re-referral to another court-martial was for a proper reason. Article 66(c), UCMJ; Koke, 34 M.J. at 314.

Before addressing the remaining assignments of error, we must comment on a couple of other facets of this case. As noted in the military judge's findings, he candidly stated that he essentially forced the convening authority to withdraw and dismiss the charges because he was chagrined at how the government apparently was managing its cases and because he was not informed of the dismissal of the second additional charge.

In addition to raising the possibility that the government's request for a delay was not decided on its true merits, it also implies that a convening authority will be penalized for not referring a particular charge for trial. We prefer to conclude the military judge did

not intend his comment in that light. Nonetheless, convening authorities must not fear being penalized for discharging their statutory responsibility diligently and conscientiously. One of the reasons Congress enacted Article 32, UCMJ, 10 U.S.C. § 832 (1994), was to guard against baseless or unprovable charges. Appellant was spared the necessity of defending against a charge of multiple rapes of his wife because the convening authority accepted the Investigating Officer's recommendation not to refer it to trial.

Finally, if a military judge believes that a base's docket is not being efficiently managed, we suggest alternative methods be found to communicate that fact to the staff judge advocate or convening authority. Judicially forcing the withdrawal and re-referral of charges runs the risk of raising the specter of interference with judicial authority, as was asserted in the instant case. Conversely, staff judge advocates must also be sensitive to this same concern when advising the convening authority to withdraw referred charges after a military judge denies a request for delay.

## VI. OTHER ISSUES

 Appellant also avers the military judge erred by denying his motion to sever the two rape specifications. We review this averment under an abuse of discretion standard. *United States v. Foster*, 40 M.J. 140 (C.M.A.1994); *United States v. Barrow*, 42 M.J. 655, 662 (A.F.Ct.Crim.App.1995), *aff'd*, 45 M.J. 478 (1997). R.C.M. 906(b)(10) allows the severance of charges if trying multiple charges together will result in a manifest injustice. The core test for the military judge is manifest injustice, not the possibility of "spillover." *United States v. Curry*, 31 M.J. 359, 372–73 (C.M.A.1990). We find no abuse of discretion by the military judge. The record of trial reflects that the government pursued both specifications on their own merit, and there was no effort by trial counsel to bootstrap the allegations of LM and AG by arguing similarity. Further, the spillover instruction given by the military judge insured the members considered each offense on its own merits.

Likewise, the military judge did not abuse his discretion by allowing the expert witness to testify during the prosecution's case-in-chief regarding the potential impact of rape on a victim's future intimate relations. The testimony complained of was within the bounds of proper response to trial defense counsel's cross-examination of AG, and its use was properly framed by the military judge's limiting instruction. MIL. R.EVID. 403.

## VII. DECRETAL

The findings and sentence are correct in law and fact, Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1994), and on the basis of the entire record, they are hereby

AFFIRMED.

Judges GAMBOA and SENANDER concur.