UNITED STATES

v.

**Staff Sergeant Frederick V. AMERINE,
FR 290–46–5139, United States
Air Force.**

ACM 24020.

U.S. Air Force Court of Military Review.

Sentence Adjudged 12 April 1983.

Decided 23 Feb. 1984.

Appellate Counsel for the Accused: Colonel George R. Stevens, Colonel Leo L. Sergi and Captain Kathleen G. O'Reilly.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Captain Brenda J. Hollis.

Before HODGSON, FORAY and MILLER, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

This case involves an attempt by the accused to possess approximately 14,855 grams of methamphetamines and a conspiracy to introduce the contraband onto Yokota Air Base, Japan. His conviction for the above offense resulted in an approved sentence extending to a dishonorable discharge, three years confinement at hard labor, forfeiture of $300.00 per month for three years, and reduction to airman basic.

## I

In a somewhat tortuous manner the evidence at trial developed the following facts. Airman Basic Page, who testified under a grant of immunity, indicated that while he was at the Osan Air Base passenger terminal he was approached by Anthony Bridgeport, a retired Air Force master sergeant who was living in Korea, and asked to deliver a box to Yokota Air Base. This conversation occurred on 21 or 22 December 1981. Page, who was acquainted with Bridgeport and considered him a "friend and drinking partner," agreed to take the package. However, when requested by the security police to open it, Page refused and was not permitted to board the aircraft.

Previously, Bridgeport had told Page if he was unable to get the package on the aircraft, he was to deliver it to a Sergeant Nuby which Page did. Nuby was in his barrack's room and expecting the package. Page returned to the terminal and boarded the aircraft on which Bridgeport was also a passenger. During the flight Bridgeport offered Page $1,000.00 to take the package to Yokota. Page understood the package to contain leather jackets. The package that Page attempted to ship was addressed to "Major Welch", a name that Bridgeport suggested to Page. Page stated that he did not know the accused and never discussed the accused with either Bridgeport or Nuby. He did not know for whom the package was intended.

Staff Sergeant Welz is a crew member who makes periodic flights between Japan and Korea. During the evening of 21 December 1981, when Welz was at Yokota Air Base, the accused called and asked if he was returning to Osan; Welz said he was, and the accused asked him to pick up a package for him from Sergeant Nuby who worked at Osan base operations. Welz agreed to do this, and upon his arrival at Osan was contacted by Nuby and went to his room in the barracks. There Nuby removed a package from a locked wall locker and gave it to Welz. The parcel was approximately two feet high, three feet long, and 10 inches wide; it was covered with manila wrapping

paper and sealed with a yellow plastic band around each side. Although Nuby indicated the package contained a "Korean cabinet," Welz became suspicious because the parcel was too heavy and not the right size for a cabinet. He opened the package and found a vinyl Korean suitcase. Inside the suitcase were plastic bags containing a white substance that "looked like crushed up rock salt or powder." Welz called his aircraft commander who in turn notified the Office of Special Investigations (OSI). The substance was approximately 30 pounds of methamphetamines. It was replaced with sugar and taken to the aircraft.

When Welz arrived at Yokota he went to the squadron area where the accused was waiting. Welz gave the accused the package and remarked "it's pretty heavy," and the accused replied "it's worth a lot of money." As the accused was leaving the base he was apprehended. A search of the car disclosed a parcel with 40 pounds of sugar in the trunk, and a business card with "Anthony J. Bridgeport" printed on it was found in the accused's wallet.

Thaddeus L. McNeil is a civilian who was formerly stationed at Yokota Air Base in the accused's squadron. He is also acquainted with Bridgeport and Nuby who he knew from Little Rock Air Force Base. On 21 June 1981, McNeil and the accused were on a training flight to Korea. As a favor for Bridgeport, McNeil was to bring some computer components from Korea back to Japan. He and the accused picked up the box at a sweater shop just outside of Osan Air Base. The box was covered with brown wrapping paper with a yellow band along the sides. The parcel was put aboard the aircraft—apparently by the accused.

After they arrived at Yokota they took the package to McNeil's house where they opened it. Inside the box was a black brief case containing plastic bags with what looked like "rock salt." The accused tasted the substance and immediately spit it out, saying it was "junk" which McNeil understood to be a street term for narcotics.[1] The accused took the contents of the pack-age to a girl friend's house. Later Bridgeport asked McNeil about the package and was told that the accused had it. In July or August the accused indicated he had been offered $50,000.00 for the box.

The accused testified that he thought the box in his car trunk contained brassware which was a Christmas present for his wife. He stated the arrangements were made by a friend who has been discharged from the Air Force and whom he cannot now locate. He maintained he did not know Nuby and had only spoken with him on the phone about the brassware. He knows Bridgeport through McNeil who he considers to be unstable. He denied ever discussing drug activity with Bridgeport, McNeil, Nuby or Page. He denied opening the package McNeil brought from Korea. He stated he met Bridgeport only once; at that time, Bridgeport gave him a business card that he put in his wallet without thinking.

Appellate defense counsel have asserted ten assignments of error. Those which warrant comment are discussed below.

II

The accused argues he was denied his right to a speedy trial. To properly assess this assertion it is necessary to relate in some detail the key events that began with his arrest in December 1981, and culminated with his conviction in April 1983.

| | |
|---|---|
| 23 December 1981 | Accused apprehended. |
| 24 December 1981 | Accused placed in pretrial confinement. |
| 30 December 1981 | Charges preferred for drug abuse [Articles 80, 81, and 134, U.C.M.J.] |
| 11 January 1982 | Accused released from pretrial confinement and restricted to the base. |
| 15 January 1982 | Request by accused for speedy trial. |
| 27 January 1982 | Charges against accused withdrawn and restriction ended. |
| 25 March 1982 | Administrative discharge proceedings initiated against accused based on allegations unrelated to the withdrawn charges. |

1. *The Random House College Dictionary* 726 (1980).

| Date | Event |
|---|---|
| 27 July 1982 | Administrative discharge proceedings withdrawn. |
| 3 August 1982 | Airman Basic Page given immunity by the Commander, 5th Air Force. |
| 8 September 1982 | Charges preferred for the drug offense under review [Articles 80 and 81, U.C.M.J.] |
| 13 September 1982 | Accused requests delay in Article 32 Investigation until 29 or 30 September 1982. |
| 28 September 1982 | Article 32 Investigation conducted. |
| 30 September 1982 | Investigating Officer's report completed. |
| 21 October 1982 | Referral to trial with a trial date of 28 October 1982. |
| 26 October 1982 | Accused requests trial delay until 1 December 1982. |
| 10 December 1982 | 39a session. Government requests a delay so that a deposition of Thaddeus McNeil, Route 8, Box 91, Raleigh, North Carolina can be obtained. Accused opposed the delay, but after military judge orders the deposition, his counsel requests the judge to also order a deposition of Master Sergeant Anthony Bridgeport (Ret'd), Tucson, Arizona. Trial judge grants the request. |
| 3 January 1983 | Accused requests a speedy trial. |
| Mid-January 1983 | Trial judge resets trial for 28 February 1983. |
| 24 January 1983 | Deposition of Bridgeport scheduled at Davis-Monthan Air Force Base, Arizona. Bridgeport not subpoenaed and did not appear. |
| 27 January 1983 | McNeil deposition taken at Seymour Johnson Air Force Base, North Carolina. |
| 4 February 1983 | United States Marshal for the District of Arizona returned Bridgeport subpoena with the notation "Mister Bridgeport could not be found." |
| 24 February 1983 | Trial judge continues trial until Bridgeport can be found and his deposition taken. |
| Early March 1983 | Trial rescheduled for 7 April 1983. |
| 25 March 1983 | Bridgeport deposition taken. On advice of counsel he declines to answer any questions. |
| 7 April 1983 | Trial begins. |

For speedy trial purposes, the Government's accountability runs from the date of restraint or from the date that charges were preferred, whichever is earlier. *United States v. Bell,* 17 M.J. 578 (A.F. C.M.R.1983). Here, however, this rule is blurred since the initial charges were withdrawn and the accused was released from pretrial confinement after 19 days and was never returned. After 27 January 1982, the accused was under no restraint whatsoever.

The accused maintains that the purported withdrawal of the charges by his squadron commander on 27 January 1982, was a nullity since only the convening authority has the power to withdraw charges. M.C.M.1969 (Rev. ed.), paragraph 56a. This is too restrictive an interpretation since that paragraph also indicates that the convening authority "may withdraw, or cause to be withdrawn" any pending charges. Since the charges were never referred to trial we will presume, in accordance with the general presumption of regularity that attends an official action, that there was a good and proper reason for the withdrawal, and that the accused's commander was acting with the full knowledge and at the direction of the convening authority. *See generally United States v. Lord,* 13 U.S.C.M.A. 78, 32 C.M.R. 78 (1962); *United States v. Simmons,* 44 C.M.R. 804 (A.C.M.R.1971). At no time during the proceedings did the trial defense counsel suggest that the withdrawal of the initial charges was accomplished for an improper purpose.

Conversely, the Government takes the position that the time accountable to them did not commence until 8 September 1982, the date the charges were preferred a second time. There is merit to this argument. Where the Government withdraws charges in good faith, the speedy trial provision of the Sixth Amendment is inapplicable to the period between the withdrawal of the charges and a subsequent repreferral of those charges. *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). Accordingly, the Government's accountability began in the case, *sub judice,* on 8 September, the second occasion the

charges were preferred. The lapsed time from 8 September until 7 April 1983, the trial date, is 212 days of which the Government is accountable for 161.

The facts and circumstances of each case must be considered to determine whether the accused was denied a speedy trial. *United States v. Dunnings,* 1 M.J. 516 (A.F.C.M.R.1975). Four factors are normally weighed in making this determination. They are: the length of the delay, the reasons for the delay, whether there has been a request for speedy trial, and prejudice to the accused. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). These factors have no "talismanic qualities," and appellate courts must balance the competing interests of the accused and the Government. *United States v. Cantu,* 15 M.J. 534 (A.F.C.M.R.1982).

After charges were preferred the second time the accused was not confined, restricted nor his freedom curtailed in any way. The case involved the alleged attempt to transport between air bases in different countries over 30 pounds of amphetamines in rock crystal form. Two witnesses, one government and one defense, were no longer on active duty and lived in the United States. Their depositions were thought relevant. From 8 September 1982, on, the Government proceeded with reasonable diligence to bring the case to trial. Brief periods of inactivity in an otherwise active prosecution are not unreasonable. *United States v. Herrington,* 8 M.J. 194 (C.M.A.1980). There is no showing in the record, and indeed the accused does contend otherwise, that there was a purposeful or oppressive design by the Government to delay his trial. *United States v. Amundson,* 23 U.S.C.M.A. 308, 49 C.M.R. 598 (1975). True, the accused requested a speedy trial on 3 January 1983, but such a demand does not require the Government to forgo a complete and thorough investigation and adequate preparation for trial. Of course, when the delay transcends the accused's right to a speedy trial it cannot be tolerated.

Weighing the factors set forth in *Barker v. Wingo, supra,* we find no prejudice to the substantial rights of the accused, particularly since he was not in pretrial confinement. The trial judge correctly denied the speedy trial motion. *United States v. Burrell,* 13 M.J. 437 (C.M.A.1982); *cf. United States v. Pierce,* 19 U.S.C.M.A. 225, 41 C.M.R. 225 (1979) (accused tried for absence without leave approximately 13 months after absence was terminated).

III

The accused contends that Thaddeus McNeil's testimony was inadmissible under Mil.R.Evid. 404(b)[2]. McNeil, whose testimony was presented by deposition, related an incident in June 1981, when he and the accused transported a package containing plastic bags filled with a "rock salt" like substance which the accused opined was narcotics. McNeil further stated that the accused left the package with a girl friend; later the accused indicated he had been offered $50,000.00 for the package, but had flushed the contents down a toilet.

The Government maintains that this evidence established that the accused had a motive, opportunity and a plan to carry out the alleged offenses; he also had the requisite knowledge, i.e., the ability to identify narcotics, and therefore was not laboring under any mistake of fact. Appellate defense counsel counters this argument by asserting that it is "ludicrous" to postulate that because the accused knew a package from Osan Air Base six months before contained drugs, he knew this package also had drugs. In his view, the potential prejudicial

2. The pertinent provision states:
 Rule 404. Character Evidence Not Admissible to Prove Conduct; Exceptions;
 Other Crimes
 * * * * * *
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts is not admissi-

ble to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

effect of the evidence far exceeded its probative value.

The probative value of "similar act" evidence is dependent on the existence of a close parallel between the crime charged and the acts shown. *United States v. Barus,* 16 M.J. 624 (A.F.C.M.R.1983). In the present case the Government offered evidence that the accused was involved in incidents with Nuby where identically wrapped packages containing narcotics were shipped between the same military installations by the same mode of transportation. McNeil's testimony literally encompasses all the acts that Mil.R.Evid. 404(b) permits. For example, the accused's motive is shown by his acknowledgement that he had been offered $50,000.00 for the contents of the package shipped in June, 1981; his status as a crew member and acquaintance with Nuby and Bridgeport provided the opportunity; his involvement in a similar shipment of drugs established an awareness of how contraband can be transported; and finally the evidence made clear the accused's ability to identify narcotics. Further, in a conspiracy case, evidence tending to show the existence of an agreement or a coordinated plan is always relevant. *See United States v. Gamble,* 541 F.2d 873 (10th Cir.1976).

Balancing the probative value of evidence offered under Mil. 404(b) against its prejudicial effect is a task within the discretion of the trial judge, and unless there is a clear abuse of that discretion, his ruling will not be overturned. Similar acts are admissible if relevant and if they tend to make the commission of the crime more probable than it would be without such evidence. *United States v. Barus, supra.* Accordingly, the trial judge did not err in admitting McNeil's testimony where he specifically instructed the members as to its limited purpose. *United States v. Barus, supra; United States v. Borland,* 12 M.J. 855 (A.F.C.M. R.1981).

 In a collateral assigned error the accused urges that although McNeil was shown to be unavailable on 10 December 1982, the date the deposition was ordered, and on 27 January 1983, the date it was taken, the trial judge failed to establish that McNeil was still unavailable at trial. The record indicated that McNeil appeared for the deposition under subpoena, and he made it clear that without being subpoenaed, he would not have testified. McNeil, a United States citizen living in North Carolina, could not be subpoenaed to testify at a general court-martial held outside the United States. *United States v. Bennett,* 12 M.J. 463 (C.M.A.1982). Thus, the deposition was admissible pursuant to Mil.R.Evid. 804(a)(5) and (b)(1). It was properly admitted.

## IV

Appellate defense counsel urge that the evidence is insufficient to support a conviction for conspiracy to introduce drugs onto a military installation (Specification of Charge II). They point out that the Government proved that the accused contacted only one co-conspirator, i.e., Nuby, during the alleged period, and that the accused denied any drug involvement.

 Initially, we note that it is not necessary that the conspirators be acquainted with each other. Lack of knowledge of the membership or the scope of the conspiracy is immaterial to the guilt of a participant. *United States v. McCauley,* 30 C.M.R. 687 (N.B.R.1960); *United States v. Rhodes,* 28 C.M.R. 427 (A.B.R.1959). A conspiracy by its very nature is not subject to direct proof as a partnership in crime is rarely reduced to writing. Therefore, proof of a conspiracy normally depends upon inferences drawn from relevant and competent circumstantial evidence. M.C.M., 1969 (Rev. ed.), paragraph 140b; *United States v. Schiavo,* 18 C.M.R. 858 (A.F.C.M.R.1955); *United States v. Rubenstein,* 19 C.M.R. 709 (A.F.B.R.1955); *United States v. Kinder,* 14 C.M.R. 742 (A.C.M.R.1973); *United States v. Coker,* 13 C.M.R. 459 (A.B.R.1953).

 After reading the record we are convinced that a conspiracy to transport narcotics from Korea to Japan existed between the accused and those named in the specification. The evidence, although cir-

cumstantial, leads inextricably to that conclusion. The transcript established that Bridgeport attempted to transport a package on a military aircraft to Japan from Korea; he failed when the person taking it was refused passage unless it was opened. The unopened package was then delivered to Nuby. A short time later the accused called Welz, a crew member and acquaintance, and asked him to pickup a package from Nuby at Osan and bring it to him at Yokota. Because Nuby appeared nervous and ill at ease, Welz returned to his room and opened the package; it contained over 30 pounds of amphetamines which law enforcement officials replaced with sugar. The accused was waiting for Welz at Yokota and took the package which he said was "worth a lot of money." The accused knows Bridgeport and Nuby and six months previously had helped deliver a package, wrapped the same as the one given to Welz, to Bridgeport in Japan. This earlier package contained a substance which the accused identified as "junk," a slang term for any form of narcotic. The accused took possession of the package and left it with a girl friend. The accused later indicated he had destroyed the contents, but stated he had been offered $50,000.00 for them.

In our opinion this evidence is inconsistent with every hypothesis of innocence. *See generally United States v. Barrentine,* 591 F.2d 1069 (5th Cir.1979). We are convinced beyond a reasonable doubt that the accused is guilty of conspiracy.

### V

■ Pursuant to *United States v. Allen,* 17 M.J. 126 (C.M.A.1984), an administrative credit for pretrial confinement is ordered. The remaining assigned errors have been examined and are resolved adversely to the accused. *United States v. Washington,* 1 M.J. 473 (C.M.A.1976); *United States v. Newman,* 14 M.J. 474 (C.M.A.1983). For the reasons heretofore stated the findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, and MILLER, Judge, concur.