*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Floyd C. GUYTON Jr., Sergeant First Class
United States Army, Appellant

**No. 21-0158**

Crim. App. No. 20180103

Argued November 16, 2021—Decided February 24, 2022

Military Judge: Christopher E. Martin

For Appellant: *William E. Cassara*, Esq. (argued); *Captain David D. Hamstra* (on brief).

For Appellee: *Captain Cynthia A. Hunter* (argued); *Colonel Steven P. Haight*, *Lieutenant Colonel Wayne H. Williams*, *Lieutenant Colonel Craig J. Schapira*, and *Captain Karey B. Marren* (on brief); *Major Mark T. Robinson*.

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS, Judge MAGGS, and Judge HARDY joined. Senior Judge COX filed a separate opinion dissenting in part and concurring in the judgment.

————————

Chief Judge OHLSON delivered the opinion of the Court.

The granted issues in this case present two questions: (1) whether the Government violated Appellant's right to a speedy trial under either Rule for Courts-Martial (R.C.M.) 707 or the Sixth Amendment of the United States Constitution; and (2) whether the United States Army Court of Criminal Appeals (CCA) erred by affirming a portion of Appellant's sentence that had not been approved by the convening authority. We hold that there was no speedy trial violation here because the military judge did not abuse his discretion when he ruled that certain days were excludable for speedy trial purposes under R.C.M. 707, and he did not err when he ruled that Appellant could not prevail on his Sixth Amendment claim because Appellant demonstrated no prejudice pursuant to an analysis under *Barker v. Wingo*, 407 U.S. 514 (1972). However, we further hold that the CCA erred

in affirming a sentence of forfeiture of all pay and allowances because the convening authority had not approved that particular portion of Appellant's sentence. Accordingly, although we affirm the lower court's judgment as to findings, we affirm only so much of the sentence as provides for a dishonorable discharge, confinement for twenty months, reduction to E-1, and a reprimand.

## I. Background

It took 192 days to arraign Appellant and 273 days to bring him to trial after repreferral of charges. At the trial, a general court-martial with enlisted representation convicted Appellant, contrary to his pleas, of one specification of rape and one specification of larceny of military property in violation of Articles 120 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 921 (2012).[1] The members sentenced Appellant to a dishonorable discharge, confinement for two years, reduction to E-1, forfeiture of all pay and allowances, and a reprimand. The convening authority approved the adjudged sentence with the exception of the portion of the sentence imposing forfeiture of all pay and allowances.

The CCA affirmed the findings but excepted the words "military property" after determining that the military judge had failed to instruct the members on the term "military property." *United States v. Guyton*, No. ARMY 20180103, 2020 CCA LEXIS 462, at *34–35 & *2 n.2, 2020 WL 7384950, at *14 & *1 n.2 (A. Ct. Crim. App. Dec. 16, 2020) (unpublished). With respect to the sentence, the CCA was "confident the panel would have adjudged the same sentence absent the [instructional] error." *Id.* at *2 n.2, 2020 WL 7384950, at *1 n.2. However, the CCA reduced Appellant's sentence of confinement by four months because of unreasonable and "unexplained" post-trial delay and therefore affirmed "only so much of the sentence as provide[d] for a dishonorable discharge, twenty months of confinement, reduction to E-1, *forfeiture of all pay and allowances*, and a reprimand." *Id.* at *1, *34–35, 2020 WL 7384950, at *1, *14 (emphasis added).

---

[1] Appellant was acquitted of one specification of rape, one specification of sexual assault, and one specification of larceny of military property in violation of Articles 120 and 121, UCMJ.

This Court granted review on the following two issues, but we ordered briefs and heard oral argument only on the first issue:

> I. Whether Appellant was denied the right to a speedy trial under RCM 707 and the Sixth Amendment to the Constitution.

> II. Whether the United States Army Court of Criminal Appeals erred by purporting to affirm "forfeiture of all pay and allowances" where the convening authority disapproved such punishment. *See* Article 66(c), UCMJ.

*United States v. Guyton*, 81 M.J. 233 (C.A.A.F. Apr. 19, 2021) (order granting review).

## II. Facts

The underlying facts that led to Appellant's convictions are not relevant to the granted issues. What is relevant for this appeal is the time line of the case leading to those convictions. The parties divide this case into three periods: *Guyton I*, *Guyton II*, and *Guyton III*. We will refer to these time periods in the same manner.

### *Guyton I*

- September 9, 2015. Appellant raped his wife, triggering a law enforcement investigation.

- September 21, 2015. Appellant's command placed an administrative flag on him.

- August 11, 2016. The Government preferred three Article 120, UCMJ, specifications against Appellant.

- October 25, 2016. The convening authority referred the charges.

- February 21, 2017. The Government learned about additional misconduct by Appellant involving larceny of military property.

- February 23, 2017. The convening authority withdrew and dismissed the referred charges without prejudice.

### *Guyton II*

- May 30, 2017. The Government preferred charges against Appellant for sexual assault *and* larceny of military property.

- August 16, 2017. The convening authority referred to a general court-martial rape, sexual assault, and larceny of military property charges.

- August 17, 2017. In completing an Electronic Docket Request form in connection with this second referral of charges, the Government stated: "The prosecution will be ready for trial on and after: 30 days from arraignment." The Government, however, did not request a specific date for the arraignment.

- August 22, 2017. The defense proposed a trial date of November 13, 2017. However, the Government opposed that date and instead proposed an earlier trial date of October 23. The military judge approved the defense date.

- August 22, 2017. The trial court received the referred charges.

- October 4, 2017. The trial court conducted a combined motions hearing and arraignment. The court held this arraignment 127 days after preferral of the charges.

- November 9, 2017. The military judge brought to the attention of the parties that there were discrepancies between the court-martial convening orders and the member seating chart.

- November 13, 2017. The *Guyton II* trial date arrived. The defense moved to dismiss the charges against Appellant for lack of jurisdiction "based on the presence of five potential interlopers" on the court-martial panel. The defense also made a speedy trial demand. The Government was granted a twenty-four-hour recess to resolve the panel issue.

- November 14, 2017. The convening authority withdrew the charges, "so that they [could] be referred to trial for court-martial under a subsequent convening order."

### Guyton III

- November 22, 2017. The convening authority referred "identical charges" to a general court-martial. The Government sent the charges to the military judge and indicated that it would be ready for trial December 11, 2017.

- November 29, 2017. The defense requested a delay until February 27, 2018, because of "various conflicts and obligations of" the Appellant's counsel. The Government opposed this defense request for delay and proposed earlier trial dates of January 4 or February 5.

- December 8, 2017. The military judge arraigned Appellant in *Guyton III* 192 days after the repreferral of charges. The defense withdrew as moot the previous motion to dismiss, but the defense demand for speedy trial "remained in place."

- December 18, 2017. The defense filed a motion to dismiss with prejudice because of speedy trial violations.

- February 27, 2018. The first day of trial was held, 273 days after preferral.

As noted above, on December 18, 2017, the defense filed a motion to dismiss with prejudice because of speedy trial violations under R.C.M. 707 and the Sixth Amendment. In regard to the R.C.M. 707 claim, the defense alleged that there was a "per se violation" of the rule because the Government failed to bring Appellant to trial within 120 days of preferring charges. In furtherance of this claim, the defense argued that Rule 1.1 of the Rules of Practice before Army Courts-Martial (Nov. 1, 2013) [hereinafter Army Rule 1.1][2] operated as an

---

[2] This provision is now under Rule 3.2 of the Rules of Practice before Army Courts-Martial (Feb. 1, 2022) [hereinafter Army Rule 3.2].

inappropriate "windfall for the Government." Specifically, the defense asserted that Army Rule 1.1 automatically excludes the period of delay between the trial court's receipt of the referred charges and the accused's arraignment unless the military judge rules otherwise, but that this automatic exclusion runs contrary to the provisions of R.C.M. 707 and applicable case law which requires a military judge to make an affirmative decision to exclude certain periods of delay. The defense alternatively argued that the Government violated Appellant's Sixth Amendment right to a speedy trial because of the "400 days and counting" that Appellant spent "pending charges" and because all four *Barker*, 407 U.S. 514, factors weighed against the Government.

The Government opposed the motion to dismiss the charges on R.C.M. 707 grounds because it claimed that it was responsible for only seventy-three days of the delay in this case. Further, in response to the defense argument, the Government asserted that Army Rule 1.1 merely operated to ensure that the "judicial delay here [was] approved pre-trial delay." The Government also opposed the Sixth Amendment speedy trial claim, arguing that the delay was not long enough to rise to the level of a constitutional violation, and arguing that Appellant had suffered no prejudice because of the delay in going to trial.

The military judge denied the defense motion to dismiss. Addressing the R.C.M. 707 claim, the military judge found that the Government was only responsible for seventy-one days of delay, which was "well within the 120-day requirement of R.C.M. 707." Specifically, the military judge ruled that "the time between the receipt of charges by the Court and the scheduling of arraignment" should not be deemed attributable to the Government and thus was excludable for speedy trial purposes. The military judge wrote in his ruling that the defense argument to the contrary was "flatly contrary to R.C.M. 707(c), [Army Rule 1.1], and case law."

In relation to this arraignment delay, the military judge continued:

> Scheduled arraignment dates are subject to a whole host of no[t]-so-unusual factors, including docket availability, the availability of all parties, and the

judicial economy that is sometimes inherent in combining arraignment and motions in a single hearing. In this case, . . . there are no unusual circumstances that would justify considering judicial delay to be non-excludable delay.

In regard to the Sixth Amendment speedy trial claim, the military judge concluded that although three of the four *Barker* factors weighed in the accused's favor, the defense ultimately "fail[ed] to demonstrate actual prejudice." The military judge then denied the defense motion to dismiss.

### III. Standard of Review

This Court conducts a de novo review of speedy trial claims. *United States v. Wilder*, 75 M.J. 135, 138 (C.A.A.F. 2016) (R.C.M. 707); *United States v. Danylo*, 73 M.J. 183, 186 (C.A.A.F. 2014) (Sixth Amendment). However, we review for an abuse of discretion the decision of a military judge to grant a delay, thereby rendering that period of time excludable for speedy trial purposes. *United States v. Lazauskas*, 62 M.J. 39, 41–42 (C.A.A.F. 2005).

### IV. Discussion

### A. R.C.M. 707

### 1. Applicable Law

An accused must "be brought to trial within 120 days after . . . [p]referral of charges." R.C.M. 707(a)(1). For purposes of R.C.M. 707, an "accused is brought to trial . . . at the time of arraignment." R.C.M. 707(b)(1). Ordinarily, when an accused is not under pretrial restraint and charges are dismissed, a new 120-day time period begins on the date of repreferral. R.C.M. 707(b)(3)(A)(i) (2016 ed.); *see also United States v. Hendrix*, 77 M.J. 454, 456 (C.A.A.F. 2018). "If charges are merely withdrawn and not subsequently dismissed, however, the R.C.M. 707 'speedy-trial clock continues to run.'" *United States v. Leahr*, 73 M.J. 364, 367 (C.A.A.F. 2014) (quoting *United States v. Britton*, 26 M.J. 24, 26 (C.M.A. 1988)).

Applying the speedy trial provisions of R.C.M. 707(c) does not merely consist of calculating the passage of calendar days. The rule explicitly states that certain days "shall not count for [the] purpose of computing time." R.C.M. 707(b)(1). For example, R.C.M. 707(c)(1) states that prior to referral, "[a]ll . . .

pretrial delays approved by a military judge or the convening authority shall be . . . excluded" from the 120-day clock imposed by R.C.M. 707(a)(1). (After referral, only the military judge has the authority to approve pretrial days that are excluded from the 120-day clock. R.C.M. 707(c)(1).) The R.C.M. "does not preclude after-the-fact approval of a delay by" the military judge. *United States v. Thompson*, 46 M.J. 472, 475 (C.A.A.F. 1997).

The Discussion to R.C.M. 707 states that "[t]he decision to grant or deny a reasonable delay is a matter within the sole discretion of . . . a military judge . . . . based on the facts and circumstances then and there existing." R.C.M. 707(c)(1) Discussion.[3] However, this Court requires "good cause" for the delay and also requires that the length of time requested be "reasonable" based on the facts and circumstances of each case. *Thompson*, 46 M.J. 475 (stating the delay must "meet[] good-cause and reasonable-in-length standards"); *Manual for Courts-Martial, United States*, Analysis of the Rules for Courts-Martial app. 21 at A21-41 (2016 ed.) ("Military judges . . . are required, under [R.C.M. 707(c)], to make an independent determination as to whether there is in fact good cause for a pretrial delay, and to grant such delays for only so long as is necessary under the circumstances.").

## 2. Analysis

Despite the fact that 192 days elapsed in this case from the time of preferral in *Guyton II* to the time of arraignment in *Guyton III*,[4] we conclude that the Government did not violate R.C.M. 707's speedy trial provision. We reach this determination because the military judge did not abuse his discretion when he decided that certain days were excludable for

---

[3] "The provisions of a discussion section to the R.C.M. are not binding but instead serve as guidance." *United States v. Chandler*, 80 M.J. 425, 429 n.2 (C.A.A.F. 2021).

[4] Because the Article 120 and 121, UCMJ, charges in *Guyton II* were merely withdrawn and not dismissed, the "R.C.M. 707 'speedy-trial clock continue[d] to run.'" *Leahr*, 73 M.J. at 367 (quoting *Britton*, 26 M.J. at 26).

speedy trial purposes and, upon accounting for those excludable delays, when he concluded that the Government did not exceed the 120-day limit imposed by R.C.M. 707(a).

Appellant argues to the contrary. Specifically, he avers that fifty-nine days of "judicial delay" should not have been excluded from the military judge's speedy trial calculations. As a result, Appellant asserts, the Government exceeded the 120-day clock in bringing Appellant to trial.

In addressing Appellant's argument, we note that the fifty-nine days which the military judge attributed to "judicial delay" encompassed two separate periods: (1) forty-three days from the date the military judge received the *Guyton II* charges to the date the military judge arraigned Appellant; and (2) sixteen days from the date the military judge received the *Guyton III* charges to the date the military judge arraigned Appellant. The military judge provided two alternative reasons why he excluded these periods of judicial delay: (1) Army Rule 1.1—as well as R.C.M. 707 and applicable case law—authorized him to do so; and (2) certain legitimate reasons for judicial delay existed in this case which justified the exclusion of those days for speedy trial purposes. We address the military judge's twin rationales in turn.

Army Rule 1.1 provides in relevant part: "Any period of delay from the judge's receipt of the referred charges until arraignment is considered pretrial delay approved by the judge per RCM 707(c), unless the judge specifies to the contrary." The parties dispute whether the Army's rule is consistent with R.C.M. 707.[5]

Appellant argues that if Army Rule 1.1 is construed as operating in such a manner as to *automatically* preapprove excludable delays, then the Army rule is inconsistent with R.C.M. 707. Indeed, there are several compelling arguments why Army Rule 1.1 is fundamentally incompatible with the

---

[5] A recent amendment to the Army Rules may have remedied the tension with R.C.M. 707. *See* Army Rule 3.2 ("Any period of delay from the judge's receipt of the referred charges until arraignment must be accounted for by the government under RCM 707. This delay is excludable judicial delay only at the discretion of the docketing judge upon request by the government.").

text and the associated discussion of R.C.M. 707 under Appellant's interpretation of Army Rule 1.1. First, R.C.M. 707(c) already provides an exhaustive list of preapproved excludable delays—stays issued by appellate courts, absence without authority by the accused, hospitalization of the accused due to incompetence, and custody of the accused by the Attorney General. This list makes no mention of judicial delays but instead states that, "All other pretrial delays *approved by the military judge* . . . shall be similarly excluded." *Id.* (emphasis added). This language indicates that the military judge in each case must make an affirmative determination that—based on the attendant circumstances of that particular case—there is good cause for a specific delay to be deemed "excludable" for R.C.M. 707 purposes. Second, although not binding, the Discussion section says that the military judge's decision to categorize a delay as "excludable" "should be based on the facts and circumstances *then and there existing.*" R.C.M. 707(c)(1) Discussion (emphasis added). Appellant asserts that this language supports the position that a military judge must explicitly approve of the categorization of a delay as "excludable" based on the circumstances of that particular case. And third as Appellant observes, the notion that there should be "pre-approved judicial delay" that is automatically excluded from the R.C.M. 707 clock would mean that *any* period of delay by a military judge—no matter how long and no matter how unreasonable—would, perforce, be excluded. Such a construction of Army Rule 1.1 would render the rule invalid because it is inconsistent with R.C.M. 707. *United States v. Williams*, 23 M.J. 362, 366 (C.M.A. 1987) (holding that "[h]owever laudable [the] objectives [of an Army judiciary's local rule] may be, they do not permit overriding Rules prescribed by the President in the Manual for Courts-Martial"); R.C.M. 108.[6]

However, this is not the only permissible construction of the language of Army Rule 1.1. A different possibility, which is favorable to the Government's position, is that Army Rule

---

[6] Nowhere in R.C.M. 707 is there any authority for service regulations to supplement the R.C.M. on this matter. The rule only authorizes "regulations prescribed by the Secretary concerned" to be implemented to allow military judges to resolve requests for pretrial delay prior to referral. R.C.M. 707(c)(1).

1.1 does not conclusively exclude periods of delay between the military judge's receipt of the charges and the date of arraignment, but instead merely establishes an interpretative presumption when the record is otherwise silent. The presumption is that when a military judge schedules an arraignment, the military judge *implicitly* approves any period of delay from the military judge's receipt of the referred charges until arraignment unless the military judge says otherwise. So under this interpretation, if a military judge simply orders that "arraignment will occur on December 8," Army Rule 1.1 provides that the order should be construed to mean "arraignment will occur on December 8 *and I approve the delay between the time of receipt of charges and December 8 under R.C.M. 707(c)*." This interpretative rebuttable presumption in this alternative view does not preclude a defense counsel from requesting that the military judge explicitly place the decision on excluding the delay on the record. Furthermore, the interpretative presumption does not preclude an appellate court from later considering whether the military judge abused his or her discretion in implicitly approving the intervening period as judicial delay under R.C.M. 707(c). If this is all that Army Rule 1.1 means, then it does not contradict R.C.M. 707.

We need not determine whether Appellant's interpretation of Army Rule 1.1 or the alternative interpretation favorable to the Government applies in this case because, as noted above, the military judge gave an alternative rationale for his ruling. He explained:

> Scheduled arraignment dates are subject to a whole host of no[t]-so-unusual factors, including docket availability, the availability of all parties, and the judicial economy that is sometimes inherent in combining arraignment and motions in a single hearing. In this case, . . . there are no unusual circumstances that would justify considering judicial delay to be non-excludable delay.

Essentially, the military judge was saying that there are certain legitimate reasons for judicial delay, and in this particular case, those legitimate reasons existed. Indeed, consistent with the "no[t]-so-unusual factors" listed by the military judge, here the record indicates that the military judge's available docket time was limited, the parties were busy with

other cases, and the military judge combined Appellant's arraignment with a motions hearing in *Guyton II*. Accordingly, it can be seen that the military judge was affirmatively deciding that based on the circumstances of this case there was good cause for the fifty-nine days of delay to be excluded from the R.C.M. 707 speedy trial calculation.

We give the military judge's explanation and approach particular weight for several reasons. First, the provisions of R.C.M. 707 make it clear that a military judge has broad latitude in deciding whether certain delays in the processing time of a case—from preferral to arraignment—are excludable for speedy trial purposes. Second, it is difficult to think of an area where an appellate court should grant more deference to a trial judge than in the docketing of cases. *See* R.C.M. 801(a)(1) ("The military judge shall . . . [d]etermine the time … for each session of a court-martial."). There are a host of moving parts that a military judge must consider when deciding upon court dates, and thus this is an area where our Court should tread lightly. Third, there is no basis in the record to conclude that animus or sloth caused the judicial delay here, or that there was a pattern and practice of extended judicial delays precipitated by, for example, a failure by the Army to provide adequate judicial resources to this particular post. Fourth, and importantly, there is no indication in the record before us that the defense objected to the *Guyton II* or *Guyton III* arraignment dates at the times they were proposed.

Though the military judge provided good cause for his decision, our inquiry must be guided by one additional consideration—whether the delay was reasonable. *See Thompson*, 46 M.J. at 475 (identifying a "reasonable-in-length standard[]"). We conclude that it was. To be sure, fifty-nine days of judicial delay from preferral to arraignment is a significant cause for concern. However, under the unusual circumstances presented here, this delay does not seem inordinately long. Moreover, we note that although Appellant was administratively "flagged" during the relevant time period and thus was not subject to promotion and had limitations placed on his duty assignments, he was not in confinement nor subject to restrictions on his liberty. Moreover, he was paid at his normal pay rate. Further, as mentioned above, Appellant did not object to the arraignment dates at the time the military judge

set them, nor did he complain about the judicial delays as they were ongoing.

In light of all these factors, we conclude that the military judge did not abuse his discretion when he excluded the fifty-nine days at issue here. As a result, the Government did not violate Appellant's R.C.M. 707 speedy trial rights.

## B. Sixth Amendment

### 1. Applicable Law

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. The Supreme Court has recognized "that pretrial delay is often both inevitable and wholly justifiable." *Doggett v. United States*, 505 U.S. 647, 656 (1992). However, the right to a speedy trial "is as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). In accordance with Supreme Court precedent, this Court weighs the following four factors from *Barker* to determine if there is a Sixth Amendment speedy trial violation: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's demand for a speedy trial; and (4) the prejudice to the accused. *United States v. Harrington*, 81 M.J. 184, 189 (C.A.A.F. 2021).

### 2. Analysis

The relevant charges in this case were preferred on May 30, 2017, and yet Appellant's trial did not begin until February 27, 2018—a period of 273 days. Despite this considerable delay, however, after weighing the *Barker* factors as demonstrated below, we conclude that Appellant has not established a Sixth Amendment speedy trial claim.

### a. Length of Delay

The parties and the military judge agreed that the delay in this case was sufficient to trigger the *Barker* analysis and that the first *Barker* factor—the length of the delay—weighs in Appellant's favor. We concur. *See United States v. Grom*, 21 M.J. 53, 56 n.4 & 58 (C.M.A. 1985) (holding that 244-day delay triggered the *Barker* analysis and stating 120-day requirement under R.C.M. 707 was "an indication of the

amount of pretrial delay that is ordinarily tolerable in a military context").[7]

### b. Reasons for the Delay

The second *Barker* factor—the reasons for the delay—weighs slightly in Appellant's favor. The military judge found that "although the Government [was] not the only cause of delay, the Government bears the brunt of [the] responsibility for the slow unfolding of this case." This included, but was not limited to, the "morass" associated with the confusion over the convening orders. However, Appellant had a hand in the delay as well. For instance, after the Government indicated that it would be ready for trial by December 11, 2017, the defense requested a delay until February 27, 2018. *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) ("delay caused by the defense weighs against the defendant"). The military judge set that trial date "[b]ased on the Court's own obligations, docket, *and the specific Defense request*." (Emphasis added.)

### c. Speedy Trial Demand

The third *Barker* factor—whether the accused made a speedy trial demand—weighs only slightly in Appellant's favor. Appellant did make a speedy trial demand, but he waited until 169 days after preferral to do so. *See United States v. Wilson*, 72 M.J. 347, 353 (C.A.A.F. 2013) (affording "only slight weight" to speedy trial demand because of its "timing" where accused waited 119 days after pretrial confinement to make this demand). Further, after making this demand, Appellant requested a delay in the trial until February 27, 2018. *United States v. Kossman*, 38 M.J. 258, 262 (C.M.A. 1993) ("Stratagems such as demanding a speedy trial now, when the

---

[7] We disagree with Appellant that the date of preferral in *Guyton I* triggered the Sixth Amendment speedy trial analysis because there is no dispute that the convening authority dismissed the *Guyton I* charges for a valid reason. *See United States v. Macdonald*, 456 U.S. 1, 7 (1982) ("[T]he Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges."); *United States v. Amerine*, 17 M.J. 947, 950 (A.F.C.M.R. 1984) ("Where the Government withdraws charges in good faith, the speedy trial provision of the Sixth Amendment is inapplicable to the period between the withdrawal of the charges and a subsequent repreferral of those charges.").

defense knows the Government cannot possibly proceed, only to seek a continuance later, when the Government is ready, may belie the genuineness of the initial request.").

### d. Prejudice

This brings us to the fourth and final *Barker* factor—prejudice to the accused. Under *Barker*, "prejudice should be assessed in the light of" the three interests of the accused "which the speedy trial right was designed to protect[:] . . . (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *United States v. Cooley*, 75 M.J. 247, 262 (C.A.A.F. 2016) (citation omitted) (internal quotation marks omitted). "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532). But here, Appellant does not claim that his defense was impaired. He also concedes "that [he] was not incarcerated, or even restricted" pending trial. Reply Brief for Appellant at 27, *United States v. Guyton*, No. 21-0158 (C.A.A.F. June 22, 2021). Instead, Appellant focuses on the interest he had in minimizing his anxiety and concern.

Appellant states that he experienced "stress flowing from the pending charges." Brief for Appellant at 23, *United States v. Guyton*, No. 21-0158 (C.A.A.F. May 13, 2021). That is certainly understandable. However, in *Barker* the Supreme Court found "minimal" prejudice where the defendant was "living … under a cloud of suspicion and anxiety" as he waited "*over four years*" for trial. 407 U.S. at 534 (emphasis added). In the instant case, following the dismissal of the initial charges, Appellant waited *about nine months* (273 days) for his trial to begin. Further, this factor anticipates that an appellant will demonstrate "some degree of particularized anxiety and concern greater than the normal anxiety and concern associated with" the delay of his trial. *United States v. Reyes*, 80 M.J. 228, 229 (C.A.A.F. 2020) (citation omitted) (internal quotation marks omitted). We find no such particularized anxiety in the record, and instead note that the military judge found that throughout the process, Appellant "maintain[ed] a positive attitude" and was "well-regarded by the members of his unit."

For the reasons cited above, Appellant has not demonstrated *Barker* prejudice. Further, because the other three *Barker* factors weigh only slightly in Appellant's favor, he has not established a Sixth Amendment speedy trial claim. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (holding that "[a] showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause" under *Barker*, 407 U.S. at 530); *Danylo*, 73 M.J. at 189 (holding that the appellant "has not demonstrated prejudice that rises to the level of a Sixth Amendment violation" and thus that his "Sixth Amendment speedy trial rights were not violated").

### C. The CCA and the Sentence

Because we conclude that there was no speedy trial violation, one final issue remains—whether the CCA erred in affirming the sentence of forfeiture of all pay and allowances. The members did indeed sentence Appellant to forfeiture of all pay and allowances as well as a dishonorable discharge, confinement for two years, reduction to the grade of E-1, and a reprimand. However, the convening authority approved "only so much of the sentence as provide[d] for a reprimand, reduction to grade E-1, confinement for 2 years, and [a] dishonorable discharge." Notably absent from the convening authority's action was any reference to forfeitures. The CCA "may act only with respect to the findings and sentence as approved by the convening authority." Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2012). And yet, the CCA affirmed a sentence that included "forfeiture of all pay and allowances." *Guyton*, 2020 CCA LEXIS 462, at *35, 2020 WL 7384950, at *14. Since the convening authority did not approve a sentence of forfeiture of all pay and allowances, the CCA could not affirm the forfeitures portion of Appellant's sentence.[8]

### V. Judgment

The judgment of the United States Army Court of Criminal Appeals is affirmed as to findings, but as to only so

---

[8] Ultimately, the CCA's error did not have any impact on Appellant because he would have forfeited the same pay and allowances by operation of Article 58b(a)(1), (2)(A), UCMJ, 10 U.S.C. § 858b(a)(1), (2)(A) (2012) (requiring a court-martial sentence of "confinement for more than six months" to result in the forfeiture of pay and allowances).

much of the sentence as provides for a dishonorable discharge, confinement for twenty months, reduction to E-1, and a reprimand.

Senior Judge COX, dissenting in part and concurring in the judgment.

I agree that the military judge adequately explained the delay in this case, and that there was therefore no violation of Rule for Court-Martial (R.C.M.) 707. However, I do not join the majority opinion on its "search and rescue" mission to salvage Rule 1.1 of the Rules of Practice before Army Courts-Martial (Nov. 1, 2003) [hereinafter Army Rule 1.1], by offering an alternative explanation for the Army rule. I do not agree that the Army rule can be construed as consistent with R.C.M. 707, and in any event, it violates Article 36(b), Uniform Code Military Justice (UCMJ), 10 U.S.C. § 836(b), "All rules and regulations made under this article shall be uniform." The effort made by the majority opinion to find a way to interpret the rule so as to save the rule actually proves my point. A lawful rule would need no help to rescue it. I respectfully dissent from that part of the opinion that gives any vitality to the Army rule.[1]

First, the rule does "automatically" preapprove judicial delay. The rule states that "[a]ny period of delay . . . *is considered* pretrial delay *approved* by the judge per RCM 707(c), *unless* the judge specifies to the contrary." Army Rule 1.1 (emphasis added). This is contrary to the R.C.M. 707 for the reasons set out in the majority opinion. Therefore, we should simply hold that Army Rule 1.1 violates R.C.M. 707.

Second, although it is true that Army Rule 1.1, just like R.C.M. 707, ultimately vests the military judge with the discretion to include or exclude judicial delay from the speedy trial calculation, the Army rule does more than "merely establish[] an interpretative presumption." *United States v. Guyton,* __ M.J. __ (11) (C.A.A.F. 2022). Indeed, if the military judge relies simply on Army Rule 1.1 to exclude pretrial delay

---

[1] *United States v. Williams*, 23 M.J. 362, 366 (C.M.A. 1987) (holding that "[h]owever laudable [the] objectives [of an Army judiciary's local rule] may be, they do not permit overriding Rules prescribed by the President in the Manual for Courts-Martial"); R.C.M. 108.

without the explanation found here, the rule operates to reverse the default rule set out in the *Manual for Courts-Martial, United States* (*MCM*).

Third, the term "judicial delay" appears to be coined just to accommodate Army military judges. In its zeal to create a situation not requiring military judges to explain why they cannot get a case to trial, the amorphous term "judicial delay" is not even defined. As explained in the majority opinion, "judicial delay" is not among the types of delays preapproved by R.C.M. 707(c), and therefore such delay would be *included* by default in speedy trial calculations absent an affirmative ruling to the contrary from the military judge. The Army rule is precisely the opposite: judicial delay is *excluded* by default in speedy trial calculations absent an affirmative ruling to the contrary by the military judge.

That the military judge has discretion to deviate from the default in either case does not mean that an Army rule that changes the default can be harmonized with the *MCM*. I would clearly hold that the rule violates R.C.M. 707 and that, for the reasons articulated in the majority's opinion, the military judge is required to make an affirmative ruling prior to excluding any pretrial delay from the speedy trial calculation. That would be a consistent application among the several services as is the intent and purpose of the UCMJ.